(September 22, 1898.)

## WILSON v. PERRAULT.

[54 Pac. 617.]

WRIT OF MANDATE—WATER FOR IRRIGATION—MAXIMUM RATE FOR—CON-
STITUTION LAW—POWER OF LEGISLATURE.—Under the provisions
of section 6, article 15, state constitution, the legislature is pro-
hibited from fixing reasonable maximum rates to be charged for
water under sale or rental. Said section commands the legislature
to provide, by law, the manner in which such rates may be estab-
lished, and by necessary implication prohibits the legislature from
fixing such rates.

(Syllabus by the court.)

Original proceeding for writ of mandate.

A. A. Fraser, E. J. Dockery and J. H. Richards, for Plaintiff.

No brief filed.

Fremont Wood and Edgar Wilson, for Defendants.

No brief filed.

This is an application for a writ of mandate to compel the
defendants to furnish the plaintiff one cubic foot of water per
second of time, continuous flow, from a certain irrigating ditch
owned by the defendants. The facts, as alleged in the affidavit
for the writ, are substantially as follows: That the plaintiff
is the owner of fifty and six one-hundredths acres of land,
situated in Ada county; that said land is desert in character,
and requires artificial irrigation to render the same susceptible of
cultivation, and, when so irrigated and supplied with water,
is of great value, to wit, the sum of $30,000, and without such
irrigation would be of no value whatever; that there is no means
of procuring water for the irrigation of said land other than
through the ditch owned by said defendants; that for a period
of about fifteen years said land had been irrigated by water from
said ditch under sale, rental, and distribution for hire; that by
means of the water so acquired the plaintiff had placed said
land in a high state of cultivation, by planting and cultivating

thereon an orchard of fruit-bearing trees; that without the water from said ditch said orchard will be totally destroyed. Then follows allegations of the ownership of said ditch and a certain water right in defendants, and that the said ditch was operated, and the said water diverted, for the purpose of irrigation and domestic use; that said water had been used in the irrigation and cultivation of lands lying under said ditch, including the land aforesaid, by way of rental and sale; that on the twelfth day of August, 1898, the defendants shut off the water, and refused to permit the plaintiff to use any of said water, for the irrigation of said land, unless the plaintiff paid $200 therefor for the season of 1898; that it requires one cubic foot per second, continuous flow, of said water for the proper irrigation of said land; that demand had been made for said water, and that the plaintiff had tendered to defendants the sum of sixty-two dollars and fifty cents for the water so demanded, which sum was the maximum rate for the use of water fixed by an act of the legislature approved March 8, 1897; that said defendants refused to accept said offer, and also refused to permit the plaintiff to use any water from said ditch unless he first paid the sum of $200 for the use thereof. The petition contains other allegations, not necessary to a determination of this case. To the complaint the defendants demurred generally and also answered. Thereupon the plaintiff demurred to the answer, and the case was heard upon the demurrers.

SULLIVAN, C. J. (After Stating the Facts.)—Counsel for defendants contend that the act of the legislature on which the plaintiff relies is unconstitutional, in that it contravenes the provisions of section 6 of article 15 of the state constitution. Said act is entitled "An act to establish a uniform price for the use of water under a sale, rental, or distribution." (See Sess. Laws 1897, p. 52.) Said act provides, *inter alia,* that it shall be unlawful to charge a higher price than sixty-two dollars and fifty cents per cubic foot per second, continuous flow, for water for any irrigating season. Said section 6 of article 15 of the state constitution is as follows: "The legislature shall provide by law the manner in which reasonable maximum rates may be

established to be charged for the use of water sold, rented or distributed for any useful or beneficial purpose." Said section of the constitution commands the legislature to provide by law the method or manner by which reasonable maximum rates for water may be established. Said act, *supra,* was not passed with a view of carrying out the provisions of said section of the constitution. No attempt is made in said act to provide the manner in which reasonable maximum rates may be established. It absolutely establishes the maximum rate at sixty-two dollars and fifty cents per cubic foot per second, continuous flow, for an irrigating season, for all ditches and canals in the state. It is a well-established rule that a state legislature has plenary power over all subjects of legislation not prohibited by the federal or state constitution, and, unless the fixing of maximum rates that may be charged for water is prohibited by the constitution, the legislature had the power to establish such rates. Prohibitions are either express or implied. It is contended by counsel for the defendants that, as the provisions of section 6 of the state constitution command the legislature to provide by law the manner in which reasonable maximum rates may be established for the use of water, it contains an implied prohibition on the legislature from absolutely fixing such rates. The framers of the constitution in preparing said section 6, and the people in adopting it, evidently intended that it should have some force and effect. If the legislature can refuse to provide by law the manner in which maximum rates for water may be established as commanded by said section, and proceed as it may deem best, and absolutely fix such rates, then said section of the constitution amounts to nothing and has no force or effect. Said section 6 would not have been inserted in the constitution had it been intended that the legislature should fix water rates. Without it the legislature had the power to fix reasonable maximum rates. By it the legislature is commanded to provide by law the manner in which reasonable maximum rates may be fixed or established, and by necessary implication prohibited from fixing or establishing such rates itself. Every provision of the constitution must, if possible, be given force and effect, and to hold that the legislature need not provide by law the manner in

which maximum rates may be established is to hold that
said section means nothing, and that the legislature is at liberty
to disregard its command.    An act was passed by the third state
legislature (see Sess. Laws 1895, p. 175) providing the manner
in which reasonable maximum rates might be fixed.    It author-
izes the district court to fix reasonable maximum rates of com-
pensation for the use of water, after due notice and trial, in
which all interested parties are entitled to a hearing.    Said act
was passed with a view of complying with the provisions of said
section 6 of the constitution.    The act of 1897, *supra*, contains
no repealing clause, and does not repeal the act of 1895, *supra.*
By the act of 1895, the third state legislature undertook to carry
into effect the provisions of said section 6 of the constitution
but the fourth legislature, without directly repealing the said
act of the third legislature, attempts to render it of no effect
by absolutely fixing a maximum rate to be applied to every
canal in the state.    Some canal companies can furnish water
for much less than others, and still make a reasonable profit on
their investment.    A rate that would pay a reasonable profit on
the investment in one canal would be confiscation for another.
No state can deprive a person of his property without due pro-
cess of law.    The framers of the constitution had in view,
when drafting said section 6, a plan whereby a reasonable maxi-
mum rate might be established for each canal.    They were men
of intelligence, and knew that no one maximum rate could be
established that would do even-handed justice to all ditch owners
and all water consumers.    What would be a fair rate to con-
sumers under one canal might be extortion to the consumers
under another canal, and what would be a fair rate to the own-
ers of one canal might be confiscation to the owners of another.
The framers of the constitution recognized these facts, and by
the provisions of said section 6 provided a plan whereby the con-
ditions actually existing might be fairly met, and no injustice
be done to the canal owner or the consumer of water.    Said
section clearly shows that the framers of the constitution recog-
nized the fact that any one maximum rate could not justly ap-
ply to all parts of the state and all canals or ditches.    They
therefore, in framing said section 6, declare that the legislature

shall provide the manner in which reasonable maximum "rates," not "rate," may be established. Had they intended that a single rate should or could be made applicable to all ditches and canals, the word "rate" would have been used, and not the plural, "rates." It is thus clearly shown that the framers of the constitution understood the conditions existing in the state, and provided for the establishment of a reasonable maximum rate for each locality or each canal, as the facts in each case would warrant, and thus do justice as nearly as possible to the owners of the ditches and canals, and to the consumers of water thereunder.

It is conceded by counsel for plaintiff that, if the rate fixed by the legislature would result in confiscation of any canal, the rate so fixed would be void as to such canal, as the fourteenth amendment to the federal constitution prohibits the taking of private property without due process of law. That admission shows the utter inutility of the legislature in attempting to fix one reasonable maximum rate to be charged for water, to be applied to all canals and ditches in the state. A rate that would give a reasonable profit to the owners of one canal might not pay any profit to the owners of another and different canal, and the rate to one consumer might be just, and the same rate extortionate when applied to a consumer of water from a different canal. The state cannot compel canal owners to furnish water to consumers without some reward; neither can it do that which in law amounts to the taking of private property for public use without just compensation or without due process of law. (*Reagan v. Trust Co.*, 154 U. S. 362, 14 Sup. Ct. Rep. 1047; *Railway Co. v. Gill*, 156 U. S. 649, 15 Sup. Ct. Rep. 484.) In order to establish a reasonable maximum rate that would be just to both the owner and consumer of water, certain facts must be known. Among them the cost of the canal, the annual cost of maintenance of the canal or ditch, and all necessary expenses connected therewith, and the amount of land that may be irrigated from such canal, etc. Thus, it is shown that many facts must be known to intelligently establish a reasonable maximum rate for water—one that would be just to the owner of the canal and the consumer of the water. And without these facts the legislature

or any other tribunal could not establish such rates. The framers of the constitution knew that it was an impossibility for the legislature to ascertain all facts necessary to establish a just maximum rate under each ditch or canal system in the state during sessions of the legislature limited to sixty days, and biennial sessions at that; and said section 6 of article 15 of the constitution was framed with a view of requiring the legislature to provide by law the manner in which reasonable maximum rates might be ascertained and established. It is thus shown that it would be impracticable, if not impossible, for the legislature to ascertain the facts necessary to be known in order to establish a reasonable maximum rate under each canal system or ditch in the state at its biennial sessions of sixty days. So the constitution, by the provision of said section 6 of the state constitution, prohibits the legislature from fixing such rates, and commanded it to provide the manner or method in which or by which such rates can be intelligently and justly established. The conclusion reached is that the provisions of said section 6 of article 15 of the state constitution, by necessary implication, prohibit the legislature from passing the act in question, and that said act wherein the legislature attempts to fix the reasonable maximum rate to be charged for the use of water is unconstitutional and void. The demurrer to the petition is sustained. The alternative writ of mandate heretofore issued is quashed, and a peremptory writ denied. Costs of this proceeding are awarded to the defendants.

Huston and Quarles, JJ., concur.