# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45001-2017

RONALD M. NATE; HEATHER SCOTT; SAGE DIXON; VITO BARBIERI; ERIC REDMAN; RON MENDIVE; MIKE KINGSLEY; THYRA STEVENSON; PRISCILLA GIDDINGS; TERRY GESTRIN; DOROTHY MOON; RYAN KERBY; JUDY BOYLE; GREG CHANEY; BRENT CRANE; LYNN LUKER; JAMES HOLTZCLAW; STEVEN HARRIS; THOMAS DAYLEY; JOHN VANDER WOUDE; CHRISTY ZITO; JEFF THOMPSON; BRYAN ZOLLINGER; and KAREY HANKS, House Representatives; and STEVE VICK; MARY SOUZA; DAN FOREMAN; STEVEN THAYN; CLIFFORD BAYER; LORI DEN HARTOG, Senators,

Petitioners,

v.

LAWERENCE DENNEY, Secretary of State of the State of Idaho, in his official capacity,

Respondent,

and

C.L. "BUTCH" OTTER, Governor of the State of Idaho, in his official capacity,

Intervenor-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, June 2017 Term

2017 Opinion No. 91

Filed: July 18, 2017

Karel A. Lehrman, Clerk

---

Original proceeding in the Idaho Supreme Court seeking a writ of mandate.

The writ of mandate is denied.

Bryan D. Smith; Smith, Driscoll & Associates, PLLC; Idaho Falls, argued for petitioners.

Brian P. Kane, Deputy Attorney General, Boise, argued for respondent Secretary of State Denney.

David F. Hensley, Boise, argued for respondent Governor Otter.

---

EISMANN, Justice.

This is an original action seeking a writ of mandamus compelling the Secretary of State to certify 2017 House Bill No. 67 as law because the Governor did not veto the bill and return it to the Secretary of State within ten days (excluding Sundays) after the legislature adjourned. We overrule *Cenarrusa v. Andrus*, 99 Idaho 404, 582 P.2d 1082 (1978), but hold that all parties are misconstruing Article IV, section 10, of the Idaho Constitution, and we deny the writ of mandate.

## I.
## Factual Background.

The facts are undisputed. House Bill No. 67 passed the House on February 2, 2017, and it was transmitted to the Senate. The bill was amended twice in the Senate, and it passed the Senate, as amended, on March 22, 2017, and was returned to the House. As amended by the Senate, the bill passed the House on March 27, 2017. The bill exempted from the state sales tax the sale of food, as defined in the bill, sold for human consumption. The legislature adjourned *sine die* on March 29, 2017 at 12:00 p.m., and the bill was delivered to the Governor at 12:05 p.m. on March 31, 2017. The Governor vetoed the bill and delivered it to the Secretary of State on April 11, 2017. Because of the veto, the Secretary of State thereafter refused to certify House Bill No. 67 as law.

On April 19, 2017, the Petitioners filed in this Court a verified petition for a writ of mandate seeking to compel the Secretary of State to certify House Bill No. 67 as law on the ground that the Governor did not veto the bill and deliver it to the Secretary of State within the time period required by Article IV, section 10, of the Idaho Constitution. The Petitioners are members of the House of Representatives and of the Senate. The Governor petitioned to intervene in this proceeding, and this Court granted that request.

## II.
## Analysis.

2

This Court has original jurisdiction to issue writs of mandamus. Idaho Const. art. V, § 9. The Governor argues that the Petitioners do not have standing to bring this proceeding. "[T]he origin of Idaho's standing is a self-imposed constraint adopted from federal practice, as there is no 'case or controversy' clause or an analogous provision in the Idaho Constitution as there is in the United States Constitution." *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 513, 387 P.3d 761, 766 (2015). Based upon decisions of the United States Supreme Court, we have stated the test for standing as follows:

> To satisfy the requirement of standing, litigants generally must allege or demonstrate an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury. The injury must be distinct and palpable and not be one suffered alike by all citizens in the jurisdiction. There must also be a fairly traceable causal connection between the claimed injury and the challenged conduct. An interest, as a concerned citizen, in seeing that the government abides by the law does not confer standing.

*Troutner v. Kempthorne*, 142 Idaho 389, 391, 128 P.3d 926, 928 (2006) (citations omitted) (internal quotation marks omitted).

The Governor argues that Petitioners do not have standing because they have not alleged that they suffered a concrete injury, but at most only have a generalized grievance. In making this argument, the Governor fails to mention that the Petitioners are members of the House of Representatives and the Senate who voted in favor of House Bill No. 67. In determining that the Tribe should be able to bring the mandamus action in *Coeur d'Alene Tribe*, a case also challenging the Governor's veto, we stated:

> Neither the members of the Senate, the Governor, nor the Secretary of State appear ready or willing to challenge the constitutionality of the Governor's purported veto or of the Senate's actions in this case. Thus, if the Tribe could not bring this writ, there would be no one to enforce the important constitutional provisions involved in this case or to ensure that the integrity of the law-making process is upheld.

161 Idaho at 514, 387 P.3d at 767.

In this case, members of the legislature are willing to challenge the constitutionality of the Governor's veto in order to ensure the integrity of the law-making process is upheld. As we implicitly recognized in *Coeur d'Alene Tribe*, they have standing to challenge whether the Governor's veto of a bill they voted to pass was timely under the Constitution. The injury required for standing does not have to be economic. *Van Valkenburgh v. Citizens for Term*

3

*Limits*, 135 Idaho 121, 125, 15 P.3d 1129, 1133 (2000) (voters who opposed a ballot legend had standing to challenge it). If Petitioners are successful in their challenge, the bill will become law. Their interest in challenging the veto is as valid as the Governor's interest in upholding it. Therefore, we hold that the Petitioners have standing to challenge the veto.

## III.

### What Does the Idaho Constitution Require?

The issue in this case is the construction of Article IV, section 10, of the Idaho Constitution, which provides:

> Every bill passed by the legislature shall, before it becomes a law, be presented to the governor. If he approve, he shall sign it, and thereupon it shall become a law; but if he do not approve, he shall return it with his objections to the house in which it originated, which house shall enter the objections at large upon its journals and proceed to reconsider the bill. If then two-thirds (2/3) of the members present agree to pass the same, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered: and if approved by two-thirds (2/3) of the members present in that house, it shall become a law, notwithstanding the objections of the governor. In all such cases the vote of each house shall be determined by yeas and nays, to be entered on the journal. Any bill which shall not be returned by the governor to the legislature within five (5) days (Sundays excepted) after it shall have been presented to him, shall become a law in like manner as if he had signed it, unless the legislature shall, by adjournment, prevent its return, in which case it shall be filed, with his objections, in the office of the secretary of state within ten (10) days after such adjournment (Sundays excepted) or become a law.

This Court has not yet construed Article IV, section 10, as a whole. In *Katerndahl v. Daugherty*, 30 Idaho 356, 164 P. 1017 (1917); *State ex rel. Brassey v. Hanson*, 81 Idaho 403, 342 P.2d 706 (1959); and *Worthen v. State*, 96 Idaho 175, 525 P.2d 957 (1974), this Court applied the requirement that every bill passed by the legislature must be presented to the governor before it becomes law to situations in which an amendment approved by both houses was unintentionally omitted in the bill presented to the governor. This Court held that the omitted amendment did not become law, except in the *Hanson* case, where the governor's correspondence to the speaker of the house showed that the governor knew the version approved by both houses and intended to approve it. In *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 511–32, 387 P.3d 761, 764–85 (2015), we held that "five days (Sundays excepted)" meant what it said, and in *Cenarrusa v. Andrus*, 99 Idaho 404, 582 P.2d 1082 (1978), a three-justice majority

4

held that "ten days after such adjournment (Sundays excepted)" did not mean what it said, but instead meant "ten days after presentment (Sundays excepted)."

Examining what the framers of our Constitution intended when they drafted Article IV, section 10, will show the error made by the three-judge majority in *Cenarrusa*. That inquiry must start with the law that was in effect when the Constitution was drafted. "The Constitution should receive a reasonable construction, and should be interpreted in such a way as to give it practical effect according to the intention of the body that framed it and the people who adopted it." *Grice v. Clearwater Timber Co.*, 20 Idaho 70, 76–77, 117 P. 112, 114 (1911). "When laws are made by a popular government, that is to say, 'a government of the people, by the people, and for the people,' we may safely assume that words in a statute or a constitution are used in a sense in which the people who made the statute or constitution understood them." *Adams v. Lansdon*, 18 Idaho 483, 504, 110 P. 280, 287 (1910) (quoting *Leonard v. Commonwealth*, 4 A. 220, 225 (Penn. 1886). "It is a well-established rule that a state legislature has plenary power over all subjects of legislation not prohibited by the federal or state constitution," and "[p]rohibitions are either express or implied." *Wilson v. Perrault*, 6 Idaho 178, 180, 54 P. 617, 617 (1898).

Section 6 of the Organic Act of the Territory of Idaho dealt with the same subject as does Article IV, section 10. Section 6 stated as follows:

> *And be it further enacted*, That the legislative power of the Territory shall extend to all rightful subjects of legislation consistent with the Constitution of the United States and the provisions of this act; but no law shall be passed interfering with the primary disposal of the soil; no tax shall be imposed upon the property of the United States, nor shall the lands or other property of non-residents be taxed higher than the lands or other property of residents. Every bill which shall have passed the council and house of representatives of the said Territory shall, before it becomes a law, be presented to the governor of the Territory; if he approve, he shall sign it; but if not, he shall return it, with his objections, to the house in which it originated, who shall enter the objections at large upon their journal and proceed to reconsider it. If, after such reconsideration, two thirds of that house shall agree to pass the bill, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered; and if approved by two thirds of that house, it shall become a law. But in all such cases the votes of both houses shall be determined by yeas and nays, to be entered on the journal of each house respectively. If any bill shall not be returned by the governor within three days (Sunday excepted) after it shall have been presented to him the same shall be a law in like manner as if he had signed it, unless the assembly, by adjournment, prevent its return ; in which case it shall not be a law: *Provided*, That whereas

5

slavery is prohibited in said territory by act of Congress of June nineteenth, eighteen hundred and sixty-two, nothing herein contained shall be construed to authorize or permit its existence therein.

12 Stat. 808, 810–11 (1863).

Comparing the provisions of the Organic Act regarding the governor approving or vetoing legislation with Article IV, section 10, of the Constitution shows the similarity between the two:

**Bills must be presented to governor to become law.**

**Organic Act:** "Every bill which shall have passed the council and house of representatives of the said Territory shall, before it becomes a law, be presented to the governor of the Territory." 12 Stat. 808, 810 (1863).

**Constitution:** "Every bill passed by the legislature shall, before it becomes a law, be presented to the governor." Idaho Const. art IV, § 10.

**Vetoed bills must be returned to originating house for reconsideration.**

**Organic Act:** "[I]f he approve, he shall sign it; but if not, he shall return it, with his objections, to the house in which it originated, who shall enter the objections at large upon their journal and proceed to reconsider it." 12 Stat. 808, 810 (1863).

**Constitution:** "If he approve, he shall sign it, and thereupon it shall become a law; but if he do not approve, he shall return it with his objections to the house in which it originated, which house shall enter the objections at large upon its journals and proceed to reconsider the bill." Idaho Const. art IV, § 10.

**A two-thirds vote of both houses is required to override a veto.**

**Organic Act:** "If, after such reconsideration, two thirds (2/3) of that house shall agree to pass the bill, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered; and if approved by two thirds (2/3) of that house, it shall become a law." 12 Stat. 808, 810–11 (1863).

**Constitution:** "If then two-thirds of the members present agree to pass the same, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered; and if approved by two-thirds of the members present in that house, it shall

6

become a law, notwithstanding the objections of the governor." Idaho Const. art IV, § 10.

**Votes to override a veto must be entered in the journal of each house.**

**Organic Act:** "But in all such cases the votes of both houses shall be determined by yeas and nays, to be entered on the journal of each house respectively." 12 Stat. 808, 811 (1863).

**Constitution:** "In all such cases the vote of each house shall be determined by yeas and nays, to be entered on the journal." Idaho Const. art. IV, § 10.

**A bill can become law without governor's approval if he does not act timely.**

**Organic Act:** "If any bill shall not be returned by the governor within three days (Sunday excepted) after it shall be been presented to him the same shall be a law in like manner as if he had signed it, unless the assembly, by adjournment, prevent its return; in which case it shall not be a law." 12 Stat. 808, 810–11 (1863).

**Constitution:** "Any bill which shall not be returned by the governor to the legislature within five days (Sundays excepted) after it shall have been presented to him, shall become a law in like manner as if he had signed it, unless the legislature shall, by adjournment, prevent its return, in which case it shall be filed, with his objections, in the office of the secretary of state within ten days after such adjournment (Sundays excepted) or become a law." Idaho Const. art. IV, § 10.

The similarity between Section 6 of the Organic Act and Article IV, section 10, of the Idaho Constitution shows that in drafting the Constitution, the framers copied the provisions of the Organic Act, except with respect to the few substantive changes that are apparent from the wording of the Constitution. They would therefore have intended that the provisions of the Constitution have the same meaning as the corresponding provisions that were copied from Section 6 of the Organic Act.

Under both the Organic Act and the Constitution, only vetoed bills were to be returned by the governor to the house in which the bill originated. The Organic Act provided that if the governor did not sign the bill, "he shall return it, with his objections, to the house in which it

7

originated." 12 Stat. 808, 810 (1863). The Constitution provides that if the governor did not sign the bill, "he shall return it with his objections to the house in which it originated." Idaho Const. art. IV, § 10. Under the law in effect when the Constitution was adopted, a governor could return a vetoed bill when the legislature was adjourned for the day, but not for the session, to the presiding officer, clerk, or any member of such house, and that would be as effectual as though he returned it in open session. Section 153 of the Revised Statutes of Idaho (1887) provided:

> If, on the day the Governor desires to return a bill without his approval and with his objections thereto to the House in which it originated, that House has adjourned for the day (but not for the sesion [sic]), he may deliver the bill with his message to the presiding officer, clerk, or any member of such House, and such delivery is as effectual as though returned in open session, if the Governor, on the first day the House is again in session, by message notifies it of such delivery and of the time when, and the person to whom such delivery was made.

It is significant that the statute provided for the return to the presiding officer, clerk, or any member of the house in which the bill had originated when that house had "adjourned for the day (but not for the session)." There was no provision for the return of the bill after the legislature had adjourned for the session. The identical statute is still in effect today. I.C. § 67-504.

Under both the Organic Act and the Constitution, a bill had to be presented to the governor before it could become a law. The Organic Act provided, "Every bill which shall have passed the council and house of representatives of the said Territory shall, before it becomes a law, be presented to the governor of the Territory." 12 Stat. 808, 810 (1863). The Constitution provides, "Every bill passed by the legislature shall, before it becomes a law, be presented to the governor." Idaho Const. art. V, § 10.

Under both the Organic Act and the Constitution, the governor was required to veto and return a bill to the house in which it originated within a specified time period *after* the bill was presented to the governor, or the bill would become law if the legislative branch was still in session. The Organic Act provided, "If any bill shall not be returned by the governor within three days (Sunday excepted) *after it shall have been presented to him* the same shall be a law in like manner as if he had signed it . . . ." 12 Stat. 808, 811 (1863) (emphasis added). The Constitution provides, "Any bill which shall not be returned by the governor to the legislature within five days (Sundays excepted) *after it shall have been presented to him*, shall become a

8

law in like manner as if he had signed it . . . ." Idaho Const. art. IV, § 10 (emphasis added). It was the presentment of the bill to the governor that commenced the running of the time period in which the governor must return a vetoed bill to the house in which it originated, and it was the failure of the governor to return the vetoed bill within the required time frame that caused the bill to become law. This provision necessarily implies that the legislature must have been in session when the bill was presented to the governor, and it must have remained in session throughout the period of time in which the governor was required to act. The legislature had to be in session to commence the running of the time period within which the governor must return a vetoed bill to the house in which it originated.

Under the Organic Act and the Constitution, a bill would not become a law due to the failure of the governor to act within the required time period if the legislative branch prevented the bill's return by adjourning *sine die*. The Organic Act stated that the bill would become law due to the governor's failure to act within the required time period, "unless the assembly, by adjournment, prevent its return; in which case it shall not be a law." 12 Stat. 808, 811 (1863). The Constitution provides that the bill will become law due to the governor's failure to act within the required time period, "unless the legislature shall, by adjournment, prevent its return." Idaho Const. art. V, § 10. The provision that the legislature could prevent the governor's return of a vetoed bill to the house in which it originated by adjourning *sine die* necessarily implies that the legislature was still in session while the time period within which the governor must act was running. The governor could return the bill only if the legislative branch was still in session. The legislature could prevent the return of a bill by adjourning *sine die* only if the time within which the governor must return a vetoed bill was still running. Because that time period began to run when the bill was delivered to the governor, the legislature must necessarily also have been in session when the bill was presented to the governor.

Both documents provide a time period within which the governor must return a vetoed bill to the house in which it originated, and in both documents that time period began to run when the bill was presented to the governor. Both documents provide that the legislature could prevent the return by adjourning *sine die*. The governor could return a vetoed bill to the house in which it originated only if the legislature was still in session. The legislative branch could only prevent the return by adjourning if the time period for returning the bill had begun to run, and it could only have begun to run if the bill had already been presented to the governor. Thus, both

9

documents clearly and necessarily imply that the legislative branch had to be in session when it presented the bill to the governor. That is the only scenario under which the legislative branch's adjournment could have prevented the governor from returning a vetoed bill before the expiration of the time period for doing so.

The Organic Act provided that if the legislative branch prevented the bill's return within the required time period by adjourning *sine die*, "it shall not be a law." 12 Stat. 808, 811 (1863). Thus, under the Organic Act, presenting a bill to the governor after adjournment would be a futile act. There is no indication that the framers intended to permit presenting a bill to the governor after adjournment when they drafted Article IV, section 10, of our Constitution. The change they made was simply to provide that if, after presenting a bill to the governor, the legislature's adjournment *sine die* prevented the governor from returning the bill within the required time period, it could still become a law. The adjournment would not, by itself, prevent the bill from becoming a law. Whether it became a law would depend upon the governor. If he did not veto the bill and file it with the secretary of state within the ten-day period following adjournment, then the bill would become a law. If he did veto it and timely file it with the secretary of state, it would not become a law. This change did not alter the implied requirement that the legislature had to have been in session when it presented the bill to the governor. It did not authorize the post-adjournment presentation of the bill to the governor.

This is shown by the last sentence of Article IV, section 10, which states:

> Any bill which shall not be returned by the governor to the legislature within five (5) days (Sundays excepted) after it shall have been presented to him, shall become a law in like manner as if he had signed it, unless the legislature shall, by adjournment, prevent its return, in which case it shall be filed, with his objections, in the office of the secretary of state within ten days after such adjournment (Sundays excepted) or become a law.

It contains two time periods within one sentence. The first is the five-day period within which to return a vetoed bill to the house in which it originated while the legislature is still in session. That time period begins to run upon the bill being presented to the governor. Because the legislature had to be in session for the governor to return the bill during that five-day period, it must have been in session when the bill was presented to the governor, which commenced the running of the time period.

10

The second is the ten-day period within which to file a vetoed bill with the secretary of state if the legislature, by adjournment, has prevented a return of the bill to the house in which it originated within the five-day period. The second time period begins to run upon such adjournment. If the framers of the Constitution had intended to change the implied requirement that bills be presented to the governor while the legislature was in session, they would have provided that both time periods begin when the bill is presented to the governor. When a bill is presented to the governor and when the legislature adjourns *sine die* are both within the sole control of the legislature. If the legislature could present a bill to the governor after adjournment, it could infringe upon the governor's right to veto the bill by presenting it to him more than ten days after adjournment.

In summary, Article IV, section 10, of the Constitution clearly and necessarily prohibits the legislature from presenting bills to the governor after the legislature has adjourned *sine die*. It requires that bills must be presented to the governor while the legislature is still in session. That is the only logical interpretation of the section.

The dissent argues that the only prohibitions on legislative actions that can be in a constitution are those that are expressly stated. That argument is contrary to a principle of constitutional interpretation that was well established when the Idaho Constitution was drafted and adopted. In *Wilson v. Perrault*, the issue was whether a statute setting one, uniform price statewide for the use of water under a sale, rental, or distribution violated article XV, section 6, of the Idaho Constitution. 6 Idaho at 179, 54 P. at 617. That section states, "The legislature shall provide by law, the manner in which reasonable maximum rates may be established to be charged for the use of water sold, rented or distributed for any useful or beneficial purpose." This Court began its analysis by stating:

> It is a well-established rule that a state legislature has plenary power over all subjects of legislation not prohibited by the federal or state constitution, and, unless the fixing of maximum rates that may be charged for water is prohibited by the constitution, the legislature had the power to establish such rates. *Prohibitions are either express or implied*.

*Id*. at 180, 54 P. at 617 (emphasis added).

This Court held that by section 6, "the legislature is commanded to provide by law the manner in which reasonable maximum rates may be fixed or established, and *by necessary implication prohibited* from fixing or establishing such rates itself." *Id*. at, 54 P. at 618

11

(emphasis added). This Court reasoned that the framers were men of intelligence and knew that one maximum rate statewide would not do justice to water consumers because of the varying circumstances around the state. We stated:

> They were men of intelligence, and knew that no one maximum rate could be established that would do even-handed justice to all ditch owners and all water consumers. What would be a fair rate to consumers under one canal might be extortion to the consumers under another canal, and what would be a fair rate to the owners of one canal might be confiscation to the owners of another. The framers of the constitution recognized these facts, and by the provisions of said section 6 provided a plan whereby the conditions actually existing might be fairly met, and no injustice be done to the canal owner or the consumer of water. Said section clearly shows that the framers of the constitution recognized the fact that any one maximum rate could not justly apply to all parts of the state and all canals or ditches.

*Id.* at 181, 54 P. at 618

What this Court in *Wilson v. Perrault* understood is that constitutions are not drafted in a vacuum. The understanding that a constitution could include express and necessarily implied prohibitions on actions of the legislature was well established prior to the drafting and adoption of our Constitution. In fact, it was so universally understood that this Court did not even feel a need to cite authority for the proposition, although there was a plethora of authority if the Court had felt the need to cite it.[1]

---

[1] Prior cases recognizing that constitutional prohibitions may be express or necessarily implied include the following: *Ex parte Lusk*, 2 So. 140, 141 (Ala. 1887) ("The inquiry is, to what extent, if any, does the law under consideration violate either of them, or any other prohibition that may be clearly implied from this clause of the constitution creating the office."); *Ex parte Martin*, 13 Ark. 198, 206 (1853) ("The constitution of this State contains no provisions that private property shall not be taken for public use, without just compensation; yet we hold that this prohibition upon the legislature, is implied from the nature and structure of our government, even if it were not embraced by necessary implication in other provisions of the bill of rights."); *Thompson v. Williams*, 6 Cal. 88, 89 (1856) ("[W]e held that the Legislature possessed every power not prohibited to it by the Constitution, either expressly or by clear implication."); *People v. Fleming*, 16 P. 298, 301 (Colo. 1887) ("There is no provision in the constitution expressly prohibiting the delegation of such power to individuals, and there is no provision requiring the delegation of such power to be made to political, legislative, or other bodies, from which such prohibition may be implied."); *Lowrey v. Gridley*, 30 Conn. 450, 458 (1862) ("As the constitution is a mere limitation on the powers of the legislative department, nothing should be regarded as prohibited which is not so either expressly or by fair and reasonable implication."); *White v. Clements*, 39 Ga. 232, 265–66 (1869) ("The bare fact, that the Constitution enters upon the subject, and fixes any qualifications or disqualifications, is an implied prohibition to any legislative interference."); *People v. Hoffman*, 5 N.E. 596, 607–08 (Ill. 1886) ("The legislature possesses all the law-making power of the state which the constitution does not expressly or impliedly prohibit it from exercising."); *Morrison v. Springer*, 15 Iowa 304, 342 (1863) ("Where the prohibition is express, of course there can be no exercise of power. So where it is necessarily implied from some express provision, the law-making power cannot interfere."); *Prouty v. Stover*, 11 Kan. 235, 255–58 (1873) ("There is no express constitutional inhibition. Implied inhibitions are, it is true, equally potent; but their existence must be equally evident."); *Police Comm'rs v. City of Louisville*, 66 Ky. 597,

12

The material facts in *Cenarrusa v. Andrus*, 99 Idaho 404, 582 P.2d 1082 (1978), were the same as in this case. The legislature adjourned *sine die* at 11:10 p.m. on March 19, 1976, and two bills that Governor Andrus later vetoed were delivered to him on March 23, 1976. *Id*. at 405–06, 582 P.2d at 1083–84. "Ten (10) days (Sundays excepted) from the date of adjournment would have expired at midnight on Wednesday the 31st of March." *Id*. at 406, 582 P.2d at 1084. On April 1, 1976, Governor Andrus purported to veto one of the bills and part of the other, and he delivered them to the Secretary of State at 3:10 p.m. that day.

The constitutional provision at issue in *Cenarrusa* stated that if the legislature adjourned *sine die* before the expiration of the time period within which the governor could return a vetoed bill to the house in which it originated, the vetoed bill "shall be filed, with his objections, in the office of the secretary of state within ten days after such adjournment (Sundays excepted) or

605 (1868) ("[A]s the Legislature is the representative and embodiment of the sovereignty of the people, the judiciary can only say their enactments are invalid when in conflict with some express or implied prohibition upon the exercise of these sovereign powers, found in the Constitution."); *Mayor & City Council of Baltimore ex rel. Bd. of Police of City of Baltimore*, 15 Md. 376, 378 (1860) ("The power of appointment to offices created by law, having been exercised by the Legislature, from the earliest period of the government, in the absence of any prohibition in the Constitution, express or implied, it is to be presumed that the people intended the Legislature should continue to exercise the power."); *People ex rel. Trombley v. Humphrey*, 23 Mich. 471, 482 (1871) ("All constitutions are subject to certain implications, which are as effectual limitations upon power as if expressly declared."); *Walther v. Warner*, 25 Mo. 277, 281 (1857) ("[W]hat indeed seems to be unquestionable, that there is in this provision [of the constitution] an implied prohibition against the taking of private property for any purpose other than for public use."); *People ex rel. Smith v. Schiellein*, 95 N.Y. 124, 129 (1884) ("The implied prohibition [in the constitution] is as effectual as if it had been expressed."); *In re Assignment of Judges*, 34 Ohio St. 431, 441 (1878) ("[A]n act in evasion of the terms of the constitution, as properly interpreted and understood, and frustrating its general and clearly expressed or necessarily implied purpose, is as clearly void as if in express terms forbidden."); *Appeal of Lewis*, 67 Pa. 153, 165 (1870) ("A prohibition may be implied even in a constitution, but the implication must be very plain and necessary."); *In re Constitutional Convention*, 14 R.I. 649, 654 (1883) ("[A]n implied is as effectual as an express prohibition [in a constitution]".); *Jackson v. Nimmo*, 71 Tenn. 597, 599 (1879) ("That must be ascertained, under our system of written constitutions, when the law is to be tested by the Constitution of the State, by finding in the Constitution an express prohibition to the exercise of the power under which the law is enacted, or a fairly implied prohibition, to be derived from a just construction of such express prohibitions as may be found in that instrument."); *Lytle v. Halff*, 12 S.W. 610, 611 (Tex. 1889) ("It has frequently been said that an act of a state legislature must be held valid unless some superior law, in express terms or by necessary implication, forbade its passage."); *Bartlett v. Wilson*, 8 A. 321, 327 (Vt. 1887) ("An act of assembly must violate some prohibition of the state or federal constitution, expressed or clearly implied, before it can be declared unconstitutional."); *Wade v. City of Richmond*, 59 Va. 583, 598 (1868) ("This case also shows that the implied prohibition of the constitution restrains the Legislature in a case affecting the rights of a county in a much less degree than the case at bar affects the rights of Henrico."); *State v. Gilman*, 33 W. Va. 146, 10 S.E. 283, 285 (1889) ("The frame of the government, the grant of legislative power itself, the organization of the executive authority, and the erection of the principal courts of justice, create implied limitations upon the law, making authority as strong as though a negative was expressed in each instance."); *Brown v. Phillips*, 36 N.W. 242, 244–45 (Wis. 1888) ("The question is not whether the constitution conferred the power to so extend the right of suffrage to women, but whether it anywhere expressly, or by *necessary* implication, prohibited the exercise of such power.").

become a law." Idaho Const. art. V, § 10. This provision is unambiguous. In order to save Governor Andrus's veto, a three-justice majority held that the word "adjournment" meant "presentment." It concluded that "the governor has ten full days from the date of presentment in which to consider bills presented to him after adjournment of the Idaho Legislature." *Id.* at 410, 582 P.2d at 1088. Its rationale for doing so was to prevent the hypothetical situation, not presented in *Cenarrusa*, that a legislature could prevent the governor from exercising a veto by presenting a bill to him more than ten days (Sundays excluded) after the legislature adjourned *sine die*.

The majority in *Cenarrusa* had no authority to amend the Constitution by changing the word "adjournment" to "presentment." "'The meaning of the constitution is fixed when it is adopted, and it is not different at any subsequent time when a court has occasion to pass upon it.'" *Girard v. Diefendorf*, 54 Idaho 467, 474–75, 34 P.2d 48, 50 (1934) (quoting Cooley's Constitutional Limitations (8th Ed.) vol. 1, p. 124). "The court did not make, nor can it change, the provisions of the constitution." *Cohn v. Kingsley*, 5 Idaho 416, 439, 49 P. 985, 993 (1897). "The court has no more power to amend the Constitution than has the Legislature, and *vice versa*." *Straughan v. City of Coeur d'Alene*, 53 Idaho 494, 501, 24 P.2d 321, 323 (1932). The *Cenarrusa* Court's action was, in a word, unconstitutional. Amendments to the Constitution must be ratified or approved by the vote of the people. Idaho Const. art. XX, §§ 1, 4.

Although this Court does not have the authority to rewrite the Idaho Constitution, it is "this Court's duty to faithfully interpret our constitution." *Miles v. Idaho Power Co.*, 116 Idaho 635, 640, 778 P.2d 757, 762 (1989). Since 1895, members of this Court, as well as others elected or appointed to fill an office created by the laws of this State, have been required to solemnly swear or affirm that they will support the Constitution of this State. H.B. No. 46, § 1, 1895 Idaho Sess. Laws 14, 14; H.B. No. 111, § 1, 1899 Idaho Sess. Laws 234, 234; Ch. 210, § 1, 1963 Idaho Sess. Laws 599, 599; I.C. § 59-401. That is what the *Cenarrusa* majority failed to do. It did not interpret the Constitution; it purported to rewrite an unambiguous phrase in order to obtain a desired result. We therefore overrule *Cenarrusa* to the extent that it is inconsistent with this opinion.

Overruling *Cenarrusa* does not resolve the issue in this case regarding the validity of the Governor's untimely veto, because the bill was not presented to the Governor while the legislature was still in session. A bill cannot become law unless it is presented to the governor,

14

Idaho Const. art. IV, § 10, and, as explained above, that presentment must occur while the legislature is in session. If we declared the Governor's veto untimely, we would also have to declare the law he vetoed void because it had not been presented to him before the legislature adjourned *sine die*. Both the presentment by the legislature and the veto by the Governor violated the Constitution.

It appears that the first time in our State's history that bills were presented to the governor after adjournment *sine die* was in 1967, when the house presented bills to Governor Samuelson nine days after adjournment *sine die*. *House Journal*, March 31, 1967, p. 470 (noting adjournment) and April 12, 1967, p. 476 (noting presentment of additional bills). Since then, the legislature has routinely presented bills to governors after adjournment, with no apparent objection by those governors. Of course, their failure to object cannot change the requirements of the Constitution. Likewise, the information provided by the Governor in this case indicates that untimely vetoes have been made pursuant to the *Cenarrusa* decision, without objection by the legislature. Under these circumstances, this opinion will only apply prospectively, to all future cases.

In *BHA Investments, Inc. v. City of Boise*, 141 Idaho 168, 173, 108 P.3d 315, 320 (2004), we set forth three factors we would weigh in deciding whether an opinion of this Court would apply prospectively only. The first factor is balanced against the other two. *Id*. The first factor is the purpose of the decision. The purpose of this opinion is to support the Idaho Constitution by explaining, for the first time, the constitutional requirement that the legislature must be in session when it presents a bill to the governor. The second factor is reliance upon prior law. In this case, the Governor relied upon the majority opinion in *Cenarrusa* in failing to veto the bill within the time period required by the Constitution. That opinion had been unchallenged for almost 39 years. The third factor is the effect on the administration of justice. For over 50 years the legislature has been presenting bills to the governor after it had adjourned *sine die*, without objection from the governors, and, as mentioned, for almost 39 years governors have been untimely vetoing bills based upon the *Cenarrusa* decision. Applying this opinion retroactively to all past and pending cases could result in a number of cases being filed to challenge legislation where the bill was presented to the governor after the legislature had adjourned *sine die* or to challenge a veto where the governor had untimely vetoed a bill based upon the *Cenarrusa* decision. In addition, applying this opinion to the veto at issue here would not change the

outcome because the bill was not presented to the governor while the legislature was still in session. Therefore, this opinion will be applied prospectively only.

The framers of our Constitution would have used the word "mandamus" in its ordinary and popular sense as defined by the laws in force at the time of the adoption of the Constitution. *Grice*, 20 Idaho at 76, 117 P. at 113; *Adams v. Lansdon*, 18 Idaho 483, 504, 110 P. 280, 287 (1910). At that time, insofar as is relevant to this case, a writ of mandamus was issued by a court "to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station," Idaho Rev. Stat. § 4977 (1887), and it was issued "in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law," Idaho Rev. Stat § 4978 (1887). In *Utah Power & Light Co. v. Campbell*, 108 Idaho 950, 953, 703 P.2d 714, 717 (1985), we stated that "[m]andamus will lie if the officer against whom the writ is brought has a 'clear legal duty' to perform the desired act, and if the act sought to be compelled is ministerial or executive in nature." In this case, the Secretary of State did not have a clear legal duty to certify that House Bill 67 became law on April 10, 2017.

## IV.
### Conclusion.

For the above reasons, we deny Petitioners' request for a writ of mandamus. Costs are awarded to the Secretary of State.


Chief Justice BURDICK, and Justices HORTON and BRODY **CONCUR.**


JONES, J., dissenting.

I respectfully dissent from the majority because I disagree with its analysis and "interpretation" of the Constitution. My analysis is derived from a strict constructionist approach to the Constitution. The Constitution should be applied as it is written and not modified according to what the Court believes the framers intended. This Court does not have the

authority to amend the Constitution[2], and I do not see how the majority's "interpretation" differs from an amendment. I am certain that my fellow justices have good intentions. Indeed, they proffered a persuasive argument. Moreover, I agree that the language of Article IV, section 10 of the Constitution *implies* that the legislature must be in session to present a bill to the governor. Crucially, though, Article IV, section 10 *does not expressly prohibit* the legislature from presenting a bill after adjournment *sine die*. It may very well be that the framers did not anticipate that future legislators might believe that presentment after adjournment *sine die* was permissible; yet, the fact remains that Article IV, section 10 of the Constitution does not expressly prohibit the legislature from presenting a bill after adjournment *sine die*. Indeed, the legislature has, for decades, routinely presented bills to the governor after adjournment *sine die*. I refuse to insert words into the Constitution that were left out by the framers.

In *Cenarrusa v. Andrus*, 99 Idaho 404, 582 P.2d 1082 (1978), this Court addressed nearly the same issue that is before us today. Eighty-five bills were presented to the governor three days (Sundays excepted) after adjournment *sine die*. The governor purported to veto a bill eight days later (five days after presentment and eleven days after adjournment, Sundays excepted). Notwithstanding the untimeliness of the governor's veto, the *Cenarrusa* Court upheld the veto by holding that the ten-day window began to run upon presentment. There are two important points to be made regarding *Cenarrusa*. First, both the *Cenarrusa* Court and this majority "interpreted" the Constitution instead of applying its exact language. The *Cenarrusa* Court "interpreted" the phrase "ten days after such adjournment" to mean "ten days after presentment." The majority's "interpretation" may be considered less offensive to the Constitution when compared to the *Cenarrusa* Court's "interpretation" because the majority merely reads between the lines of Article IV, section 10. Nevertheless, both "interpretations" stray from the exact language of the Constitution and amount to unauthorized amendments to the Constitution.

Second, the majority fails to acknowledge that the *Cenarrusa* Court considered, but rejected, the same conclusion reached by the majority here. The *Cenarrusa* Court noted that the Illinois Supreme Court was faced with a similar issue and framed the competing "interpretations" as follows: "we are forced to the adoption of one of two impossible constructions. One would impair the legislative power to fix the time of presentment, the other

---

[2] Article XX, sections 1 and 4 lay out the proper methods of amending the Constitution, which require the ratification or approval by a vote of the people. Idaho Const. art XX, §§ 1, 4.

would lessen the period of time for the Governor's consideration of the matter, and, in House Bill No. 537, remove it entirely." *Id.* at 408, 582 P.2d at 1086 (quoting *Petersen v. Hughes*, 25 N.E. 2d 75 (Ill. 1939)). Ultimately, the Illinois Supreme Court upheld both the legislature's right to present a bill after adjournment *sine die* and the governor's right to a full ten-day window to consider a bill: "Any construction which reduces the ten-day period belonging to the Governor or imposes a duty upon the General Assembly to present all bills before the date of adjournment, would lead to the defeat of the benefits which the constitutional provision was intended to guarantee." *Id.* Similarly, the *Cenarrusa* Court considered the competing "interpretations" of Article IV, section 10:

> Our main concern here begins with the language: "unless the legislature shall, by adjournment, Prevent [sic] its return." The word "return" assumes delivery or presentment to the Governor—he can not return that which he has not received. The constitutional language is best read on the presumption that the drafters contemplated that every bill would be presented to the governor before the legislative body adjourned. Only under that construction would the governor always have a full ten days to give due and deliberate consideration to the rush of bills which invariably arrive on his desk during and immediately after the closing hours of the session.

> *There is no provision in our Constitution governing the time within which the legislature must present bills to the governor, and it is not for this Court to impose any limitation as to time.* The legislature has set for its guidance the time within which, after passage, bills should be presented to the governor. Our Constitution itself contains nothing which precludes presentation of bills more than ten days after adjournment Sine [sic] die. If we were to hold that the governor was without power to veto a bill more than ten days after adjournment, the legislature would be in a position to defeat at will one of the constitutionally granted powers of a separate and coequal branch of government merely by delaying presentment beyond the time in which the governor could act. A construction of the Constitution which defeats the very purpose of allowing the governor an opportunity to consider the wisdom of a bill is to be avoided.

*Id.* at 409, 582 P.2d at 1087 (emphasis added) (footnote omitted). Ultimately, the *Cenarrusa* Court emphasized the importance of providing the governor a full ten-day window to consider bills presented after adjournment *sine die* and resolved the issue by holding that the ten-day window begins to run upon presentment. Further, the *Cenarrusa* Court held that it was not within the judiciary's authority to limit the time within which the legislature must present a bill. *Id.* at 410, 582 P.2d at 1088. Conversely, the majority resolves the issue by holding that Article IV, section 10 precludes the legislature from presenting bills after adjournment *sine die*. Which "interpretation" is correct? Neither; I am bothered by both results because both demonstrate a

18

disregard for the integrity of the Constitution. Again, the bottom line is that both "interpretations" amount to unauthorized amendments to the Constitution.

I would decide the case by applying the exact language of the Constitution:

Any bill which shall not be returned by the governor to the legislature within five (5) days (Sundays excepted) after it shall have been presented to him, shall become a law in like manner as if he had signed it, unless the legislature shall, by adjournment, prevent its return, in which case it shall be filed, with his objections, in the office of the secretary of state within ten (10) days after such adjournment (Sundays excepted) or become a law.

Idaho Const. art. IV, § 10. Article IV, section 10 does not expressly prohibit the legislature from presenting bills after it adjourns *sine die*. The legislature has, for decades, routinely presented bills to the governor after adjournment *sine die*. Such presentment is authorized by Joint Rule 5 of the Senate and House of Representatives, which provides in part that "All bills shall be so signed and delivered to the governor for his consideration within 72 hours after enrollment."[3] There is nothing in the Constitution that prevents the legislature from adopting such a rule. Here, the legislature adjourned *sine die* on March 29, 2017. House Bill No. 67 was presented to the Governor on March 31, 2017. The Governor purported to veto the bill on April 11, 2017, eleven days after adjournment (Sundays excepted). According to Article IV, section 10, his veto was invalid and the bill became law. Therefore, the writ of mandamus should be issued compelling the Secretary of State to certify 2017 House Bill No. 67 as law. I acknowledge that my approach does not resolve the hypothetical harm presented in *Cenarrusa*, *i.e.*, that the legislature could do away with gubernatorial consideration by presenting a bill later than ten days after adjournment *sine die*. However, that is not the issue before the Court today.

Separately, I disagree with the majority's holding that this opinion will only apply prospectively. I recognize that this Court has "discretion to limit the retroactive application of a particular decision." *BHA Inv., Inc. v. City of Boise*, 141 Idaho 168, 173, 108 P.3d 315, 320 (2004). Nonetheless, the majority has seemingly failed to consider individuals who may have legitimate challenges to laws that, as bills, were presented after the legislature adjourned *sine die*. The issue of retroactive/prospective application is not as simple as the majority makes it out to be, and it should only be ruled upon after the issue is squarely before this Court and has been briefed and argued.

---

[3] An enrolled bill is defined as "A bill that has passed both houses and awaits only the signatures of the presiding officers thereof."

Lastly, I acknowledge that my reading of Article IV, section 10 is contrary to the principle of constitutional interpretation that "was well established when the Idaho Constitution was drafted and adopted." However, I do not believe that it is correct to apply that principle of constitutional interpretation in this case. Principles of constitutional interpretation vary depending on the theory of constitutional interpretation that is applied. Certain theories of constitutional interpretation consider the intent of the framers and the context in which a document was written. Other theories look only to the text of the document. Article IV, section 10 is a complex and inartfully drafted provision that is capable of more than one construction depending on which theory of constitutional interpretation is applied. My approach differs from both the majority's and the *Cenarrusa* Court's approach because my approach is not an interpretation at all; rather, it is simply a reading of the specific language of Article IV, section 10. None of these approaches are inherently wrong; rather, they demonstrate that reasonable minds can and will differ over the best interpretation of a constitutional provision. Indeed, the *Cenarrusa* Court considered the majority's "interpretation" but rejected it in part out of respect for the separation of powers, stating: "There is no provision in our Constitution governing the time within which the legislature must present bills to the governor, and it is not for this Court to impose any limitation as to time." *Cenarrusa* at 409, 582 P.2d at 1087. Similarly, the Illinois Supreme Court rejected an interpretation that would "impair the legislative power to fix the time of presentment." *Petersen*, 25 N.E. 2d 75, 80 (Ill. 1939). The reasoning supporting the decisions of the *Cenarrusa* Court and the *Petersen* Court—respecting the position of the legislature as a separate and coequal branch—is widely recognized, although not in this specific context.[4]

---

[4] *Etowah Cnty. Civic Ctr. Auth. v. Hotel Services, Inc.*, 974 So. 2d 964, 967 (Ala. 2007) ("[W]ith respect to matters that are internal to the functioning of the legislative branch, we defer to the judgment of the legislature."); *Abood v. League of Women Voters of Alaska*, 743 P.2d 333, 338 (Alaska 1987) ("[I]t is the legislature's prerogative to make, interpret and enforce its own procedural rules and the judiciary cannot compel the legislature to exercise a purely legislative prerogative."); *League of Arizona Cities and Towns v. Brewer*, 146 P.3d 58, 60 (Ariz. 2006) ("The Separation of Powers Clause of the Arizona Constitution expressly prohibits one branch of government from intruding into or 'exercising the powers properly belonging to' another branch."); *Arkansas State Highway Comm'n v. White Advert. Intern.*, 620 S.W. 2d 280, 281 (Ark. 1981) ("Article 4 of the Arkansas Constitution prohibits intrusion by the judiciary upon the domain of either the legislative or the executive branches of government."); *Connecticut Indem. Co. v. Superior Court*, 3 P.3d 868, 872 (Cal. 2000) ("It is a 'well-settled principle that the legislative branch is entitled to deference from the courts because of the constitutional separation of powers.'"); *People v. Zapotocky*, 869 P.2d 1234, 1243–44 (Colo. 1994) ("This precept, also known as the separation of powers doctrine, imposes on the judiciary both a proscription against interfering with the executive or legislative branches, and a duty to perform its constitutional and statutory obligations with complete independence."); *Pellegrino v. O'Neill*, 480 A.2d 476, 481 (Conn. 1984) ("Just as the exercise of judicial power by the legislature is constitutionally prohibited, so is the legislative power forbidden to the judiciary."); *Florida Senate v. Florida*

In sum, the majority makes a strong argument derived from an "interpretation" of the Constitution that was previously considered and rejected by the *Cenarrusa* Court. There is nothing novel about this "interpretation." But, this "interpretation" amounts to an unauthorized amendment to the Constitution. "[T]his Court has insisted upon strict adherence to the procedures outlined in our Constitution for enacting laws and in exercising the veto power." *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, —, 387 P.3d 761, 767 (2015). The proper method of amending the Constitution requires the ratification or approval by a vote of the people. Idaho Const. art. XX, §§ 1, 4. Article IV, section 10 *does not expressly prohibit* the legislature from presenting a bill to the governor after adjourning *sine die*. If this is to change, it should require a vote of the people, not a vote of the justices.

---

*Public-Employees Council*, 784 So. 2d 404, 408 (Fla. 2001) ("It is the final product of the legislature that is subject to review by the court, not the internal procedures."); *Schwab v. Ariyoshi*, 564 P.2d 135, 144 (Haw. 1977) ("The power of the legislature should not be interfered with unless it is exercised in a manner which plainly conflicts with some higher law."); *Electrical Wholesale Supply Co., Inc. v. Nielson*, 136 Idaho 814, 825, 41 P.3d 242, 253 ("The power to make law and declare public policy is vested with the legislature. This Court will not intrude upon the province of the legislature."); *People v. Whitfield*, 888 N.E. 2d 1166, 1177–78 (Ill. 2007) ("Our supervisory authority . . . . does not . . . extend to the legislative branch of our state government."); *Citizens Action Coal. of Indiana v. Koch*, 51 N.E. 3d 236, 241 (Ind. 2016) ("To maintain the separation of powers, this Court 'should not intermeddle with the internal functions of either the Executive or Legislative branches of Government.'"); *Des Moines Register and Tribune Co. v. Dwyer*, 542 N.W. 2d 491, 495 (Iowa 1996) ("[T]he separation of powers doctrine . . . requires we leave intact the respective roles and regions of independence of the coordinate branches of government."); *Casper v. Int'l Ass'n of Firefighters*, 713 P.2d 1187, 1190 (Wyo. 1986) ("Courts will not usurp or encroach upon the legislative function."); *Outagamie Cnty. v. Smith*, 155 N.W. 2d 639, 648 (Wis.1968) ("This Court is without authority to intermeddle in matters of legislative concern."); *Holmes v. Clawges*, 702 S.E.2d 611, 617 (W. Va. 2010) ("[C]ourts have no authority—by mandamus, prohibition, contempt or otherwise—to interfere with the proceedings of either house of the Legislature."); *Lummi Indian Nation v. State*, 241 P.3d 1220, 1229 (Wash. 2010) ("Courts must exercise care not to invade the prerogatives of the legislative branch lest the judicial branch itself violate the doctrine of separation of powers. Co-equal branches must respect one another's independence*."); Brazos River Auth. v. City of Graham*, 354 S.W. 2d 99, 109 (Tex. 1961) ("[Courts] may not invade the legislative field."); *Petition of Famous Brands, Inc.*, 347 N.W. 2d 882, 884 (S.D. 1984) ("[C]ourts have no legislative authority, and should avoid judicial legislation, a usurpation of legislative powers, or any entry into the legislative field.").