(No. 7238. February 16, 1946.)

E. N. HANSON, Plaintiff and Respondent, v. T. M. De-
COURSEY, R. S. BROWN and FRANK PIERSALL, the
Board of County Commissioners of Canyon County,
Idaho; TRESSIE E. NICKERSON, County Superintend-
ent of Schools of Canyon County, Idaho; INDEPEND-
ENT SCHOOL DISTRICT NO. 28 of Caldwell, Canyon
County, Idaho, and INDEPENDENT SCHOOL DIS-
TRICT NO. 37 of Nampa, Canyon County, Idaho, De-
fendants and Appellants.

[166 P. (2d) 261.]

Frank Langley, Attorney General, and P. J. Evans,
Assistant Attorney General, for appellants.

Laurence N. Smith, Frank Estabrook, and Anderson &
Leguineche for appellants Independent School Districts.

No appearance in this court by or on behalf of respondent.

AILSHIE, C. J.—This is an action, under the Declaratory Judgment Act (Chap. 70, 1933 Sess. Laws), brought by plaintiff against defendants, for decree declaring Chapter 7, 2d Extra. Session 1944 (2d E. S., '44, p. 11) unconstitutional. Although a property owner and taxpayer in Canyon County, plaintiff does not live within either of the Independent School Districts, named as defendants and appellants herein.

The act in question is an emergency measure, due to war conditions, enacted for the purpose of making funds available "for the employment of teachers and payment of their salaries, . . . . to the extent necessary for all School Districts" of the state. The county commissioners of each county are "authorized to levy a tax not exceeding one and one-half mills on each dollar of all taxable property in the county, in addition to all other levies now authorized by law for general school purposes"; the funds collected by the special levy to be kept in an account, designated as the "County Teachers Aid Fund". Any school district, having first levied the maximum provided by law for general school purposes, including special levies, is entitled to make application to the county superintendent for the relief deemed necessary. Thereafter the county school superintendent and board of county commissioners shall determine

the amount of relief to which the district is entitled. Applications by school districts shall be made on or before September 1st, '44; and the county superintendent of schools and board of county commissioners shall determine the total amount of funds required for the County Teachers Aid Fund for the ensuing year and make a levy sufficient to produce the required amount, "not to exceed one and one half mills". "Any encumbered balance remaining in the County Teachers Aid Fund on the 30th day of June, 1945, shall revert to and become a part of the general school fund of the county." (2d Extra. S. L., '44, pp. 11, 12)

Based upon the pleadings and points of law, trial was had by the court. Findings of fact and conclusions of law were entered, the court finding, *inter alia*:

"That the Act referred to does not provide for a general increase in the levy for general school purposes; that the measure of the increase to be paid from the funds is left to the opinion of the trustees of the school district seeking to obtain the funds; that the only limitation placed upon the amount is that which the directors of a school district applying for the benefits of the fund shall deem necessary, providing the same does not exceed the one and one-half ($1\frac{1}{2}$) mill levy on all the taxable property of the county; that the Act makes no provision for adjusting the differences between the amount which the school district may seek and the amount which the Board of County Commissioners and the County Superintendent of Schools may allow."

Judgment was entered declaring the Act above referred to unconstitutional and decreeing that any levy made by the Board of County Commissioners, under the provisions of the Act, be declared null and void. From the judgment defendants have appealed.

When the cause was called for hearing in this court, counsel for appellants presented argument, no appearance being made for respondent. Motion was filed by appellants for reversal of judgment, on the ground that respondent had abandoned the cause, failed and neglected to appear in court, serve or file brief. (Citing Rule 57, Sup. Court; 4 C.J.S., p. 1832) The motion is denied.

Although appellants cite nine alleged errors committed by the lower court, in its Findings of Fact, Conclusions of

Law and judgment, the essential point in this case is whether the Act before us is in violation of Art. 3, Sec. 19, of the State Constitution.[1] While some of the errors assigned are in the lower court's findings of fact, we do not concern ourselves with them, as they are, in the first place, directed at findings supporting the unconstitutionality of the Act; and, in the second place, since nothing but the pleadings were presented to the lower court, we are at liberty to make any conclusions of fact consistent with the pleadings and the Act, regardless of the findings of the lower court.

The Act under consideration applies uniformly to all counties in Idaho; and its constitutionality is attacked on the ground that it is a local or special law "For the assessment and collection of taxes" and one "Providing for the management of common schools."

We dismiss the latter as untenable inasmuch as the Act in question does not concern itself whatever with the management of common schools and is merely in keeping with the policy of the state towards education as enunciated in Art. 9, Sec. 1, of the constitution.[2]

The only question that presents difficulty here is whether the Act is a "local or special" law for the assessment and collection of taxes, in violation of Art. 3, sec. 19, of the state constitution.

The 1911 legislature passed an act providing that county commissioners should levy not less than five mills nor more than ten mills for general school purposes. Our court held the Act constitutional and mandatory. (*Fenton v. Board of County Commrs.*, 20 Ida. 392, 404, 405, 119 P. 41) The

---

[1] Art. 3, sec. 19:

"The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say:

... For the assessment and collection of taxes...

Extending the time for collection of taxes...

Exempting property from taxation...

Providing for the management of common schools..."

[2] Art. 9, sec. 1:

"The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature of Idaho, to establish and maintain a general, uniform and thorough system of public free common schools."

dissenting opinion held that the act (1911 Sess. Laws, p. 483) should be construed as directory only and not mandatory; that, if so held, it would be constitutional. Some of the objections were raised as to this 1911 Act as were raised in the case at bar. Since the 1911 Act required a *minimum levy, regardless of the needs of the district*, and was passed for the benefit of the poorer schools, it was contended that that act violated various provisions of the constitution. The contention made in that case was denied by this court.

In the case at bar the only mandatory provisions are relative to the procedure by means of which the needy districts are to get assistance. The Act clearly states that a district in need *must* first levy on all the property within the district to the full extent permitted by law; and that thereafter, if the district needs more for its teachers, it must determine the extent and nature of that need and make application to the county superintendent of schools. The county superintendent and the county commissioners are then authorized to consider the application and determine whether need exists, as the application indicates, and whether the applying district needs the amount asked for or a lesser amount and, having determined the extent of the need, the county commissioners may levy a tax on all the property throughout the county not to exceed one and one-half mills.

This clearly leaves the management and control of the schools to the county and the districts, as has been the policy throughout the state's history. The legislature in the case at bar has merely made it possible for the more needy schools of the county to obtain help from the whole county, if such assistance is necessary, in the judgment of the county superintendent of schools and the commissioners. This is subject to the conditions, that the district must first raise as much money as possible and that the district needs the money for its teachers; and such decision is up to the superintendent and commissioners, with the statutory provision, that they cannot exceed a levy of one and one-half mills on the county generally for this purpose. There is no requirement that the county commissioners and superintendent *must* raise the money; there is no provision that the application must be accepted as correct. Thus it leaves the common school subject to local control, and, for the purposes of the emergency, the Act presents a plan for rais-

ing additional funds for payment of teachers' salaries without interfering with local management of the schools.

The respondent contended in the lower court, that the possibility and probability of his being taxed for his own district and to help, up to the maximum of one and one-half mills per dollar, another district, is unfair and unjust. Considering the policy of our state constitution towards education (Art. 9, sec. 1) and our policy to leave the common schools under local control, it would seem that the Act before us offers a very wise method of obtaining additional funds for the needy school. After all, it is not too much to say, that the greatest asset of the state is its children; and, hence, education is of the greatest importance not only to a district, county or state, but to everyone who believes in our form of popular government. Our government has survived as a free Republic for over a century and a half and, during this time, it has, through the Federal government, the state government, and local government, often called upon those not in need to help those in need. Through the vast highway systems of our land, the dams, reclamation, forest service, agricultural experimentation, and the various agencies created to cope with the economic ills we faced during the '30s, the well-to-do were called upon, through taxation of some kind, to contribute a greater amount than those less fortunate and less able. It has paid untold dividends to both the rich and the poor. In a republic that faces many problems, more serious than ever in its lifetime, the young must be educated if we are to have a chance to survive.

We must not be unmindful that, during most of the time we were fighting, our school teachers received less per month than any of the states contiguous with Idaho (Oregon, Washington, Nevada, Utah, Wyoming and Montana). Something had to be done. It must be admitted that, under a system of free economy, salaries are important. What more equitable means could have been found, to assist the needy schools and give protection to the taxpayer, than to pass the Act in question? We do not mean to say that the wisdom of legislation should determine its constitutionality nor that the emergency factor should be of controlling importance. We have held consistently, that the wisdom or lack of wisdom of legislation is not the concern of this court. (*Luker v. Curtis.* 64 Ida. 703, 714, 136 P. (2d) 978,

and cases cited.) Within the framework of the constitution, the legislature is free to determine the wisdom or lack of wisdom of legislation. We believe that, in determining the constitutionality of an act, it is of importance for the court to inquire whether the Act in question seeks to accomplish a legitimate end and is one reasonably designed for that purpose. We think this Act seems to accomplish the policy of our constitution towards education without working any unfair or unjust burden on those taxpayers who might be called upon for additional taxes to accomplish the ends desired.

The Act uniformly applies to every school district in Idaho in every county of Idaho. Any school district may seek assistance. The maximum levy is reasonable and uniform throughout the state. The raising of the levy, the management of the funds, procedure for obtaining assistance, are all uniform throughout the state and uniform in their application to all taxpayers and all schools; (*Mix v. Board of County Commissioners*, 18 Ida. 695, 706, 112 P. 215) and the determination as to the necessity of the assistance is kept on the local level.

In considering this, it must be remembered that this was not an Act passed for the benefit of school teachers. It was rather to maintain our school system which, without the benefit of this Act or without some type of assistance, might well have collapsed. That the act benefited the teacher is but incidental.

The judgment of the trial court is reversed and the cause is remanded with direction to dismiss the action. Costs awarded to appellants.

Holden, J., concurs.

Givens, J., concurs in the conclusion reached.

BUDGE, J., concurring specially—In my opinion the only essential question presented on this appeal involves the correctness of the trial court's conclusion I, namely:

"That the said Act is unconstitutional in that it is a special law for the assessment and collection of taxes, as contemplated by Article 3, Section 19, of the Constitution of the State of Idaho, and that said levy is expressly prohibited."

Article 3, Section 19 of the Constitution provides:

"The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say * * * For the assessment and collection of taxes."

Respondent contended in the court below that the statute here in question is unconstitutional for the reason that it is a local or special law and, therefore, in conflict with said art 3, sec. 19, and particularly to that part of said section quoted, consequently void.

The court fell into error in the construction of Chap. 7, Second Extra. Session Laws, 1944, in holding that said act is a local or special act and in violation of the constitutional provision, supra.

The act applies, generally, to each and every school district "organized and existing under the laws of the State of Idaho." Clearly it is a general law.

"Where a law is general and uniform throughout the state, operating alike upon all persons and localities of a class, it is not open to the objection that it is local or special legislation." *Allen v. Kennard* (Neb.), 116 N. W. 63, 64, citing *State v. Graham* (Neb.) 19 N. W. 470; *State v. Berka* (Neb.) 30 N. W. 267; *Van Horn v. State* (Neb.) 64 N. W. 365; *Livingston L. & B. v. Drummond* (Neb.) 68 N.W. 375.

" 'Local' or 'special' legislation, according to the well-known meaning of the words, applies exclusively to special or particular places, or special and particular persons, and is distinguished from a statute intended to be general in its operation, and that relating to classes of persons or subjects." *Herold v. Talbott* (Ky.) 88 S.W. (2d) 303.

An examination of the following cases will bear out the conclusion reached: *Mix v. Board of County Commrs.*, 18 Ida. 695, 112 P. 215; *In re Crane*, 27 Ida. 671, 689, 151 P. 1006; *Washington County v. Paradis*, 38 Ida. 364, 222 P. 775; *Big Wood Canal Company v. Chapman*, 45 Ida. 380, 263 P. 45; *Koelsch v. Girard*, 54 Ida. 452, 33 P. (2d) 816.

For the above reason I concur in the affirmance of the judgment.

MILLER, J., sat at the hearing but, deeming himself disqualified, did not participate in the decision.