# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 53264-2025

| | | |
|---|---|---|
| Verified Petition for Writ of Prohibition. | ) | |
| ------------------------------------------------------------ | ) | |
| COMMITTEE TO PROTECT AND | ) | Boise, January 2026 Term |
| PRESERVE THE IDAHO CONSTITUTION, | ) | |
| INC.; MORMON WOMEN FOR ETHICAL | ) | Opinion filed: February 5, 2026 |
| GOVERNMENT; SCHOOL DISTRICT NO. | ) | |
| 281, LATAH COUNTY, STATE OF IDAHO; | ) | Melanie Gagnepain, Clerk |
| IDAHO EDUCATION ASSOCIATION, | ) | |
| INC.; JERRY EVANS; MARTA | ) | |
| HERNANDEZ; STEPHANIE MICKELSEN; | ) | |
| ALEXIS MORGAN, on behalf of herself and | ) | |
| her minor children; KRISTINE ANDERSON, | ) | |
| on behalf of herself and her minor children; | ) | |
| each of the foregoing individually and as | ) | |
| private attorneys general on behalf of the | ) | |
| public of the State of Idaho, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF IDAHO, acting by and through | ) | |
| the IDAHO STATE TAX COMMISSION, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| IDAHO STATE LEGISLATURE, | ) | |
| | ) | |
| Intervenor-Respondent. | ) | |
| | ) | |

Original proceeding in the Idaho Supreme Court seeking a writ of prohibition.

The Petition for Writ of Prohibition is <u>denied</u>.

Hawley Troxell Ennis & Hawley, LLP, Boise, for Petitioners. Marvin M. Smith and Marvin K. Smith argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent State of Idaho. Michael A. Zarian argued.

Givens Pursley, LLP, Boise, for Respondent Idaho State Legislature. Jeremy C. Chou argued.

_____

BEVAN, Chief Justice.

This Petition for Writ of Prohibition involves a challenge to the constitutionality of the Idaho parental choice tax credit, a refundable tax credit available to parents, legal guardians, and foster parents who incur certain educational expenses, including private school fees and tuition, on behalf of dependent students. I.C. § 63-3029N.

Various entities and individuals—the Committee to Protect and Preserve the Idaho Constitution, Inc. ("the Committee"); Mormon Women for Ethical Government ("MWEG"); School District No. 281, Latah County, State of Idaho ("the School District"); the Idaho Education Association, Inc. ("the IEA"); Jerry Evans; Marta Hernandez; Stephanie Mickelsen; Alexis Morgan; and Kristine Anderson (collectively, "the Petitioners")—filed a Verified Petition for Writ of Prohibition ("the Petition"), asking this Court to exercise its original jurisdiction and issue a writ prohibiting the Idaho State Tax Commission from implementing the tax credit, as it is statutorily required to do. They argue this Court should do so because the tax credit violates the Idaho Constitution in two ways: first, by creating a non-public, but publicly funded, system of education distinct from the public school system, which they contend violates Article IX, section 1 of the Idaho Constitution; and, second, by violating the "public purpose doctrine," which requires that legislation primarily benefit public rather than private interests.

The Respondents are the State of Idaho, acting by and through the Tax Commission, and the Idaho State Legislature, which was permitted to intervene. They oppose the Petition, arguing that the Petitioners lack standing, this Court should not relax its traditional standing requirements to address the merits of the Petition, and the Petitioners have not shown that the tax credit is unconstitutional.

For the reasons discussed below, we deny the Petitioners' request for a writ of prohibition and dismiss the Petition.

## I.  BACKGROUND

### A.  The Idaho parental choice tax credit

The Idaho parental choice tax credit was enacted in House Bill 93 during the 2025 legislative session. Act of Feb. 27, 2025, ch. 9, 2025 Idaho Sess. Laws 29-34. Its purpose, according to the legislature, is to make it easier for parents "to choose educational services that meet the needs of their individual children." *Id.* § 1, 2025 Idaho Sess. Laws at 29. It purports to do that by making those services more affordable through a refundable tax credit available to parents, legal guardians, and foster parents who incur certain expenses for private educational services. The tax credit and the details regarding its implementation are codified primarily in Idaho Code section 63-3029N.

The tax credit is available to any "parent" who incurs "qualified expenses" associated with an "eligible student" properly claimed as a dependent. *See generally* I.C. § 63-3029N. The parent can claim a tax credit of up to $5,000 per eligible student per year or $7,500 per eligible student per year for students with certain disabilities. I.C. § 63-3029N(3), (7). "Parent" is defined to include an eligible student's parent, legal guardian, or a foster parent licensed and in good standing. I.C. § 63-3029N(2)(e). An "eligible student" is a full-time resident of Idaho between five and eighteen years of age, or between five and twenty-one years of age for students with certain disabilities. I.C. § 63-3029N(2)(b). "Qualified expenses" are expenses incurred on a broad range of educational services and goods, including private school tuition or fees, tutoring, standardized assessments, advance placement examinations, preparatory courses, and textbooks. I.C. § 63-3029N(2)(f). Notably, parents may not claim the tax credit for any semester in which their student is enrolled in a public school, even if those parents incur expenses for private educational services for the student, such as tutoring or preparatory courses. *See* I.C. § 63-3029N(10)(b).

Parents who wish to claim the tax credit must first apply with, and be approved by, the Tax Commission, which administers the application and approval process. I.C. § 63-3029N(4), (9), (15), (16). The Tax Commission began accepting applications on January 15, 2026, and will continue accepting applications for sixty days. I.C. § 63-3029N(4). When the application period closes, the Tax Commission will have thirty days to notify parents whether they are approved to claim the tax credit. *Id.* The total value of all tax credits issued may not exceed $50,000,000 for each tax year. I.C. § 63-3029N(12). Certain applicants receive initial priority, after which applications are prioritized based on the dates they are received. *Id.*; *see* I.C. § 63-3029N(6). In 2026, applicants whose adjusted gross income does not exceed 300% of the federal poverty level will receive initial priority. I.C. § 63-3029N(6). In subsequent years, applicants who received the

3

tax credit in the prior year will receive initial priority, followed by applicants whose taxable income does not exceed 300% of the federal poverty level, after which applications are prioritized based on the dates they are received. *Id.*

A parent whose modified adjusted gross income does not exceed 300% of the federal poverty level may also "elect a onetime advance payment of the credit for each eligible student." I.C. § 63-3029N(9). When approved, the advance payment must be made by the Tax Commission within sixty days of the date it notifies the parent of approval, but not later than August 30 of each year. *Id.* Advance payments will be made from the "Idaho parental choice tax credit advance payment fund," established by Idaho Code section 67-1230. The fund consists of "[l]egislative appropriations and transfers; [d]onations and contributions . . . ; [r]eversions of unused, paid back, or recovered advance payment funds; and [i]nterest earned on idle moneys in the fund[.]" I.C. § 67-1230(2)(a).

Idaho Code section 63-3029N expressly provides that nothing in it should be "construed to permit any government agency to exercise control or supervision over any nonpublic school or to give the state authority to regulate the education of nonpublic school students." I.C. § 63-3029N(20). "A nonpublic school shall not be required to alter its creed, practices, admissions policy, or curriculum in order to accept students whose payment of tuition or fees stems from a refundable tax credit under this section." *Id.*

## B. The Petition

The Petitioners ask this Court to issue a writ prohibiting the Tax Commission from implementing Idaho Code section 63-3029N. They contend that relief is appropriate because the statute violates the Idaho Constitution in two ways.

First, they argue that Idaho Code section 63-3029N violates Article IX, section 1 of the Idaho Constitution, which provides:

> SECTION 1. LEGISLATURE TO ESTABLISH SYSTEM OF FREE SCHOOLS. The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, free common schools.

Idaho Const. art. IX, § 1. The Petitioners argue that this provision should be read as both a mandate and a limitation on the legislature's power, requiring the legislature to create and maintain a system of public education meeting certain conditions while also precluding the legislature from creating

4

and maintaining any additional system of education. They contend that Idaho Code section 63-3029N indirectly funds private schools, which effectively and impermissibly creates and maintains "a separate system of nonpublic education."

Second, the Petitioners argue that Idaho Code section 63-3029N violates the "public purpose doctrine." This Court has previously held that "[i]t is a fundamental constitutional limitation upon the powers of government that activities engaged in by the state, funded by tax revenues, must have primarily a public rather than a private purpose." *Idaho Water Res. Bd. v. Kramer*, 97 Idaho 535, 559, 548 P.2d 35, 59 (1976). According to the Petitioners, the tax credit primarily benefits private entities—in particular, private schools—and not the public.

## II.    JURISDICTION AND JUSTICIABILITY

This Court has original jurisdiction to issue writs of prohibition. Idaho Const. art. V, § 9. "A writ of prohibition serves a fundamental but narrow purpose. Its office is to determine if the body whose action is challenged was attempting to act without or in excess of its jurisdiction." *Hepworth Holzer, LLP v. Fourth Jud. Dist. of State*, 169 Idaho 387, 394, 496 P.3d 873, 880 (2021) (quoting *Clark v. Meehl*, 98 Idaho 641, 642, 570 P.2d 1331, 1332 (1977)); *see also* I.C. § 7-401 ("The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person."). "Any person may apply to the Supreme Court for the issuance of any extraordinary writ or other proceeding over which the Supreme Court has original jurisdiction." I.A.R. 5(a). "Once this Court asserts its jurisdiction, it may issue writs of mandamus or prohibition." *Associated Press v. Second Jud. Dist.*, 172 Idaho 113, 120, 529 P.3d 1259, 1266 (2023).

"The writ of prohibition is not a remedy in the ordinary course of law, but is an extraordinary remedy." *Id.* (quoting *Maxwell v. Terrell*, 37 Idaho 767, 774, 220 P. 411, 413 (1923); and then citing *Wasden ex rel. State v. Idaho State Bd. of Land Comm'rs*, 150 Idaho 547, 551, 249 P.3d 346, 350 (2010)). This Court will issue it only "with forbearance and caution," *Taylor v. Girard*, 54 Idaho 787, 791, 36 P.2d 773, 774 (1934), and not in "doubtful cases," *Rust v. Stewart*, 7 Idaho 558, 561, 64 P. 222, 223 (1901). Like a writ of mandamus, the writ of prohibition "is not a writ of right, and this Court's choice to issue a writ is discretionary when compelled by urgent necessity." *Hepworth Holzer*, 169 Idaho at 393, 496 P.3d at 879. A petitioner seeking a writ of prohibition has the burden to establish that "there is not a plain, speedy, and adequate remedy in

the ordinary course of law." *Wasden*, 150 Idaho at 551–52, 249 P.3d at 350–51 (quoting *Henry v. Ysursa*, 148 Idaho 913, 915, 231 P.3d 1010, 1012 (2008)).

### A. Traditional Standing

As with any party seeking judicial relief, a petitioner asking this Court to exercise its original jurisdiction to issue an extraordinary writ must generally establish standing to do so. "It is a fundamental tenet of American jurisprudence that a person wishing to invoke a court's jurisdiction must have standing." *Haight v. Idaho Dep't of Transp.*, 163 Idaho 383, 391, 414 P.3d 205, 213 (2018) (quoting *Gallagher v. State*, 141 Idaho 665, 668, 115 P.3d 756, 759 (2005)). "To establish standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Associated Press*, 172 Idaho at 119, 529 P.3d at 1265 (citation modified) (quoting *Reclaim Idaho v. Denney*, 169 Idaho 406, 419, 497 P.3d 160, 173 (2021)). An injury sufficient to support standing must be "an invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Gilbert v. Progressive Nw. Ins. Co.*, ___ Idaho ___, ___, 577 P.3d 519, 529 (2025) (citation modified) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). It must be "real and not abstract," "personally experienced" by the party whose standing it allegedly supports, and not "speculative or hypothetical." *Id.* (citation modified). "[W]hen standing is challenged, mere allegations are not sufficient, and the party invoking the court's jurisdiction must demonstrate facts supporting this allegation." *State v. Philip Morris, Inc.*, 158 Idaho 874, 882, 354 P.3d 187, 195 (2015).

Jerry Evans is a former Idaho State Superintendent of Public Education, Stephanie Mickelson is a current Idaho legislator, and MWEG is "a cross[-]partisan, ideologically diverse coalition of women who are dedicated to building a more peaceful, just[,] and ethical world through advocacy and civil empowerment." Each of these petitioners expresses disagreement with the policy choice reflected in the tax credit, but none identifies any injury that might support their standing.

The Committee is an advocacy organization "whose members are Idaho citizens committed to preventing the subversion of constitutional rights of the people of Idaho and ensuring that the Idaho Constitution is not violated by laws enacted by the [l]egislature." It contends that it has standing because it "incurred litigation costs" in association with the Petition. However, a party to litigation does not suffer an injury sufficient to support standing simply by expending resources to

pursue the litigation. The contrary view would effectively eliminate the requirement to show injury-in-fact as a component of standing. Nor does the Committee suffer an injury by devoting resources to advocating against the tax credit when its mission is to advocate against legislation it views as unconstitutional. *See BABE VOTE v. McGrane*, 173 Idaho 682, 692–94, 546 P.3d 694, 704–06 (2024) (holding that an organization that had voter education as its mission did not have standing to challenge a law because the law allegedly required the organization to expend additional resources on voter education).

The remaining Petitioners' allegations of harm are based on asserted future injuries they claim they will suffer by virtue of their respective relationships to Idaho's public education system. Those Petitioners include the School District; the IEA, which is a labor union representing educators in Idaho; Marta Hernandez, an educator; and Alexis Morgan and Kristine Anderson, parents of children enrolled in Idaho's public schools. On the record before this Court, the injuries alleged by these Petitioners are speculative and hypothetical and therefore insufficient to establish traditional standing.

The Petitioners and the Respondents dispute how, if at all, the tax credit will affect Idaho's public school system. Disputes of this nature are ordinarily addressed through a process of discovery and fact-finding in lower courts. Because the Petitioners have invoked this Court's original jurisdiction and sought extraordinary relief through a writ of prohibition, rather than attempting to prove their claims at trial in the district court, these disputes have not been put to the test through the crucible of trial. Even in the context of a petition for extraordinary relief, this Court remains "'the court of last resort in Idaho'—not the court of first resort." *Associated Press*, 172 Idaho at 123, 529 P.3d at 1269 (quoting *State v. Cates*, 117 Idaho 372, 372, 788 P.2d 187, 188 (1990)). A petitioner's request that this Court exercise its original jurisdiction does not automatically transform this Court into a trier of fact. *See id.* at 120–21, 529 P.3d at 1266–67 ("[W]e will not usurp a lower court's role . . . from serving as the trier of fact." (citation modified)). It is in part for that reason that relief through a writ is termed "extraordinary." This Court does not resolve disputed factual questions in the first instance, including questions relevant to standing. That role is reserved for the lower courts, and the limited circumstances in which we depart from that practice are not present here.

**B. Relaxed Standing**

When a petitioner is unable to establish traditional standing, this Court has, in limited circumstances, applied a relaxed standing test, which is a separate and distinct concept from traditional standing. "Over the last few decades this Court has relaxed traditional standing requirements in order to hear cases involving alleged constitutional violations that would otherwise go unaddressed because no one could satisfy traditional standing requirements." *Reclaim Idaho*, 169 Idaho at 422, 497 P.3d at 176. We have done so only when the petitioner establishes that "(1) the matter concerns a significant and distinct constitutional violation, and (2) no party could otherwise have standing to bring a claim." *Id.* (citation modified).

Even though the Petitioners have not established that they have traditional standing to challenge the constitutionality of the tax credit, this Court will relax its traditional standing requirements to address the merits of the Petition. The Petition presents an urgent question concerning a significant and distinct constitutional violation. The Petitioners contend that the legislature exceeded its constitutional authority while dramatically altering the manner in which education is funded in Idaho by establishing a second system of education. The Idaho Constitution recognizes that education is vital to the State and "[t]he stability of a republican form of government." Idaho Const. art. IX, § 1; *see also Hanson v. De Coursey*, 66 Idaho 631, 636, 166 P.2d 261, 263 (1946) (recognizing that "education is of the greatest importance not only to a district, county or state, but to everyone who believes in our form of popular government").

Pursuant to the new law, the Tax Commission began accepting applications for the tax credit on January 15, 2026, and may begin notifying applicants they are entitled to the credit as early as March 15, 2026, at which point parents will be making decisions regarding the education of their children based on those determinations. Not long thereafter, the Tax Commission will begin making advance payments of the tax credit to eligible parents. Requiring the Petitioners to seek relief through the lower courts in such a short time would very likely result in "uncertainty and [the] disruption of educational services during a drawn[-]out trial court proceeding," leaving parents unable to make informed decisions regarding the education of their children. *Ybarra v. Legislature by Bedke*, 166 Idaho 902, 906, 466 P.3d 421, 425 (2020) (exercising original jurisdiction over a petition for extraordinary writ alleging a constitutional violation directly impacting the provision of education).

Notwithstanding our conclusion, we note that this is a close question. The urgency associated with the Petition appears, at least in part, to have been created by the Petitioners. Idaho

8

Code section 63-3029N became law on February 27, 2025, ten and a half months before the Tax Commission would begin accepting applications for the credit. Act of Feb. 27, 2025, ch. 9, § 2, 2025 Idaho Sess. Laws 29, 29–33. Materials submitted by the Petitioners show that the Committee was lobbying against the tax credit before then, in early January 2025. Still, the Petition was not filed with this Court until mid-September 2025, roughly seven months after Idaho Code section 63-3029N became law. We caution parties contemplating a request for writ relief that the urgency required to justify that relief cannot be manufactured by postponing a request for relief in the ordinary course of law. *See Regan v. Denney*, 165 Idaho 15, 32, 437 P.3d 15, 32 (2019) (Moeller, J., concurring in part and dissenting in part) ("Notwithstanding the majority's belief that there is an urgency to this matter based on the nature of the constitutional challenge, any urgency or uncertainty in this case is mainly the result of Regan's own actions in filing his petition.").

That said, the Respondents do not dispute that this matter concerns a significant and distinct constitutional question of an urgent nature. Instead, they argue that this Court should not exercise its original jurisdiction based on the second criterion for relaxed standing: whether another party has standing to challenge Idaho Code section 63-3029N. *Reclaim Idaho*, 169 Idaho at 422, 497 P.3d at 176. The Respondents suggest that the State Board of Education ("Board") has standing to file this action, but has not elected to do so.

According to the Respondents, under the Petitioners' own theory, Idaho Code section 63-3029N creates a separate system of education that, under Article IX, section 2 of the Idaho Constitution, should be subject to supervision by the Board. *See* Idaho Const. art. IX, § 2 ("The general supervision of the state educational institutions and public school system of the state of Idaho, shall be vested in a state board of education, the membership, powers and duties of which shall be prescribed by law."). The Respondents posit that because Idaho Code section 63-3029N(20) expressly precludes such supervision, the Petitioners' theory implies that Idaho Code section 63-3029N "diminishes the role of" the Board, which would therefore have standing to challenge its constitutionality.

We are not persuaded. It is far from clear that the Board would have traditional standing to bring this action, particularly where the tax credits at issue apply only to private entities. The Idaho Constitution charges the Board with supervision of Idaho's "*state* educational institutions and *public* school system of the state of Idaho[.]" Idaho Const. art. IX, § 2 (emphasis added). The Respondents' theory that the Board would have standing to challenge the constitutionality of Idaho

9

Code section 63-3029N turns on the questionable proposition that private entities are transformed into state educational institutions or parts of a public school system simply because they incidentally benefit from a tax credit. Whether the Board could satisfy traditional standing requirements in this context remains an open question.

Even assuming the Board has standing, we nevertheless apply relaxed standing and exercise jurisdiction here. This Court first articulated the conditions under which it might relax the traditional standing requirements in *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 387 P.3d 761 (2015). Although this Court's articulation of the second condition—that "no party could otherwise have standing to bring a claim," *id.* at 514, 387 P.3d at 767—appears categorical, this Court has applied that requirement in a more pragmatic and flexible manner.

For example, in *Coeur d'Alene Tribe*, the petition requested a writ of mandamus to require the Secretary of State to certify a bill as law notwithstanding the then-Governor's untimely attempt to veto the bill. *Id.* at 512, 387 P.3d at 765. This Court concluded that the petitioner, the Coeur d'Alene Tribe, lacked traditional standing, but nonetheless relaxed traditional standing requirements to address the merits of the petition. *Id.* at 513–14, 387 P.3d at 766–67. Despite acknowledging that other parties, including members of the Idaho State Senate, likely had standing to challenge the effectiveness of the veto, this Court relaxed the traditional standing requirements not only because of the urgency and importance of the constitutional question, but also, apropos to this case, because the other parties with standing did not appear to be "ready or willing" to challenge the effectiveness of the veto. *Id.* at 514, 387 P.3d at 767.

In *Coeur d'Alene Tribe*, this Court's decision to relax the traditional standing requirements turned on whether the nature of the alleged constitutional violation, coupled with the limitations on standing, made it unlikely that an urgent and important constitutional question would be redressed. *See id.* at 513–15, 387 P.3d at 766–68. That was so even though parties other than the petitioners likely had standing. *See id.* at 514–15, 387 P.3d at 767–68. We have recently engaged in a similar analysis. *See BABE VOTE*, 173 Idaho at 694, 546 P.3d at 706 (relaxing standing to address the merits of a petition challenging the constitutionality of bills relating to voter identification requirements where "no party appears ready or willing to challenge the constitutionality of the [contested laws] because general voters affected by this legislation, and more specifically students and disabled people, likely do not have the resources or motivation to engage in costly and lengthy litigation"). Similarly, here, even if the Board were to have standing

10

to challenge the constitutionality of Idaho Code section 63-3029N, it is apparently not ready or willing to do so. Therefore, because this matter presents a question of great importance and constitutional urgency, and because it is unlikely that any party with standing will challenge the constitutionality of Idaho Code section 63-3029N, we relax the traditional standing requirements and address the Petition.

## III.    ANALYSIS

Before addressing the substance of the Petitioners' constitutional arguments, we briefly address an additional deficiency in their request for a writ of prohibition: their failure to argue that the Tax Commission would be acting without or in excess of its jurisdiction by implementing Idaho Code section 63-3029N.

While the Petitioners have titled this action as a "Verified Petition for Writ of Prohibition," the Petition and supporting briefing focus on the assertion that Idaho Code section 63-3029N violates the Idaho Constitution. As a result, the Petitioners' arguments are directed almost entirely at obtaining a declaration that Idaho Code section 63-3029N is unconstitutional.

As a threshold matter, we recently held that "the Idaho Constitution grants this Court original jurisdiction to issue the writs enumerated in Article V, section 9 and only grants this Court original jurisdiction to issue a declaration of law when necessary to adjudicate a claim for one of the enumerated writs." *Idaho State Athletic Comm'n v. Off. of the Admin. Rules Coordinator*, 173 Idaho 384, 392, 542 P.3d 718, 726 (2024). The Petitioners have not explained how a declaration that Idaho Code section 63-3029N is unconstitutional is necessary to determine whether the Tax Commission is acting without or in excess of its jurisdiction. *See Reclaim Idaho*, 169 Idaho at 423, 497 P.3d at 177 ("One seeking a writ of prohibition must show . . . the tribunal, corporation, board or person is proceeding without or in excess of the jurisdiction of such tribunal, corporation, board, or person . . . ." (citation modified); *see also* I.C. § 7-401 (providing that a writ of prohibition "arrests the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person"). Nevertheless, the Respondents have not contested this point. Therefore, we will proceed to consider the Petitioners' arguments seeking a declaration that Idaho Code section 63-3029N is unconstitutional.

A "party challenging a statute on constitutional grounds 'bears the burden' of establishing that the statute is unconstitutional 'and must overcome a strong presumption of validity.'" *Planned*

11

*Parenthood Great Nw. v. State*, 171 Idaho 374, 397, 522 P.3d 1132, 1155 (2023) (quoting *CDA Dairy Queen, Inc. v. State Ins. Fund*, 154 Idaho 379, 382, 299 P.3d 186, 189 (2013)). "When possible, the Court is 'obligated to seek an interpretation of a statute that upholds its constitutionality.'" *Id.* at 397–98, 522 P.3d at 1155–56 (alteration omitted) (quoting *Am. Falls Reservoir Dist. No. 2 v. Idaho Dep't Water Res.*, 143 Idaho 862, 869, 154 P.3d 433, 440 (2007)). Correspondingly, "[t]he Court's power to 'declare legislative action unconstitutional should be exercised only in clear cases.'" *Id.* at 398, 522 P.3d at 1156 (quoting *Am. Falls Reservoir Dist. No. 2*, 143 Idaho at 869, 154 P.3d at 440).

The Petitioners offer two arguments supporting their view that Idaho Code section 63-3029N is unconstitutional. First, they argue that the education tax credit created by the statute is inconsistent with Article IX, section 1 of the Idaho Constitution. Second, they contend that the law is unconstitutional because it primarily benefits private rather than public interests. Importantly, the Petitioners do not argue that the public school system established by the legislature is somehow deficient, or that the tax credit would render it constitutionally deficient. For the reasons explained below, we conclude that neither argument carries the Petitioners' burden to show that Idaho Code section 63-3029N is unconstitutional.

**A. The Petitioners have not shown that Idaho Code section 63-3029N is inconsistent with Article IX, section 1 of the Idaho Constitution.**

The Idaho Constitution "is not a grant but a limitation on legislative power so that the legislature may enact any law not expressly or inferentially prohibited by the state or federal constitutions." *Standlee v. State*, 96 Idaho 849, 852, 538 P.2d 778, 781 (1975). "Prohibitions or limitations in the Idaho Constitution on this power 'are either express or implied.'" *Planned Parenthood*, 171 Idaho at 407, 522 P.3d at 1165 (quoting *Wilson v. Perrault*, 6 Idaho 178, 180, 54 P. 617, 617 (1898)). "This means that the Idaho Constitution is not the source of the rights it enshrines; rather, it limits the power of the government to infringe upon those rights." *Id.* at 406, 522 P.3d at 1164. Whether express or implied, limitations on legislative power must be "based on the plain language of the Idaho Constitution." *Id.* at 407, 522 P.3d at 1165. "The general rules of statutory construction apply to constitutional provisions." *State v. Barr*, 174 Idaho 392, 395, 555 P.3d 1082, 1085 (2024) (citation modified) (quoting *Westerberg v. Andrus*, 114 Idaho 401, 403 n.2, 757 P.2d 664, 666 n.2 (1988)). "This Court has recognized that where a statute or constitutional provision is plain, clear, and unambiguous, it speaks for itself and must be given the interpretation the language clearly implies." *Coeur d'Alene Tribe*, 161 Idaho at 518, 387 P.3d at

771 (citation modified) (quoting *Verska v. St. Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 895, 265 P.3d 502, 508 (2011)).

The Petitioners argue that Idaho Code section 63-3029N is inconsistent with Article IX, section 1 of the Idaho Constitution, which provides:

> SECTION 1. LEGISLATURE TO ESTABLISH SYSTEM OF FREE SCHOOLS. The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, free common schools.

Idaho Const. art. IX, § 1. The parties agree that the provision is a mandate, requiring that the legislature establish a system of public schools that is general, uniform, thorough, free, and common. The Petitioners contend that it is also a limitation, preventing the legislature from "establish[ing] and maintain[ing] other educational systems outside of this single system." To support that claim, they point to the use of the indefinite article "a" in Article IX, section 1. It requires the legislature "to establish and maintain *a* . . . system of . . . schools." Idaho Const. art. IX, § 1 (emphasis added). The Petitioners suggest that the duty to establish "a" system of schools limits the legislature's authority, so that the legislature must establish and maintain one and only one educational system. According to the Petitioners, Idaho Code section 63-3029N violates that limitation because the legislature is using the tax credit to indirectly fund a system of education involving private schools that is distinct from the public school system. This, they contend, is tantamount to establishing and maintaining a second system of schools in violation of Article IX, section 1. The Respondents counter that Article IX, section 1 sets a floor, not a ceiling, and by its plain text, gives the legislature "a duty to do one ('a') thing, without speaking to what else it can or cannot do with its power."

We recognize that in some contexts, a provision that uses an indefinite article like the word "a" with a singular noun phrase may convey a limitation. Against the presumption that authority is limited and must be expressly granted, a provision granting authority that uses the indefinite article may be reasonably read as granting limited authority. For example, where an owner of real property has authority to build structures on the property only if authorized by restrictive covenants, a provision of the covenants authorizing owners to build "a house" might reasonably be read as authorizing the building of one and only one house. *See Holladay Duplex Mgmt. Co. v. Howells*, 47 P.3d 104, 107 (Utah Ct. App. 2002) ("The use of the word 'a,' the use of the singular 'house,' and the underlying purpose of the covenant—to restrict construction and preserve the

13

residential character of the development—convince us that the phrase 'a one family dwelling house' means one single family home.").

This was generally the basis for our holding in *Evans v. Andrus*, 124 Idaho 6, 855 P.2d 467 (1993), a case the Petitioners rely on to support their argument here. In *Evans*, this Court considered the constitutionality of a bill that, according to this Court, "divide[d] the Board of Education into three autonomous governing bodies." *Id.* at 9, 855 P.2d at 470. Article IX, section 2 of the Idaho Constitution provides, in relevant part: "The general supervision of the . . . public school system of the state of Idaho, shall be vested in a board of education, the . . . powers and duties of which shall be prescribed by law." Idaho Const. art IX, § 2. This Court quoted that provision in *Evans*, italicizing both the phrase "general supervision" and the indefinite article "a," and concluded that "the Constitution of the State of Idaho requires a single board of education to supervise the state educational institutions and public school system of the state of Idaho[.]" *Id.* at 10, 855 P.2d at 471. This Court held that the bill was unconstitutional because it created "*three* boards of education," with "[e]ach board . . . supervis[ing] portions of Idaho's educational institutions and public school system, thereby depriving the single constitutionally mandated board of authority to act as a whole body on all educational issues which are entrusted to that board by [Article IX, section 2] of the Idaho Constitution." *Id.* at 11, 855 P.2d at 472. The Petitioners characterize *Evans* as holding that the bill in question was unconstitutional "because the use of the article 'a' required a 'single' board of education." Likewise, they claim, "the plain language [of Article IX, section 1] is clear that there is but one system of public schools to be established and maintained in the state."

We conclude that Petitioner's reading of Article IX, section 1 is inapt. Their reading is unduly restrictive and disregards the legislature's "plenary power[1] over all subjects of legislation not prohibited by the federal or state constitution[s]." *Planned Parenthood*, 171 Idaho at 406–07, 522 P.3d at 1164–65 (citation modified) (quoting *Wilson*, 6 Idaho at 180, 54 P. at 617); *see also Smylie v. Williams*, 81 Idaho 335, 339, 341 P.2d 451, 453 (1959) ("[T]he legislature has plenary power in all matters of legislation except where prohibited by the constitution.").

---

[1] "Plenary Power refers to complete and exclusive authority over a particular subject matter, constrained only by constitutional limitations. When a governmental body holds plenary power, it may legislate or act within that area without requiring additional authorization." *Plenary Power,* Wex, Cornell Law School Legal Information Institute, (last visited Feb. 4, 2026) (archived at https://www.law.cornell.edu/wex/plenary_power).

We hold that the use of the indefinite article "a" in Article IX, section 1, does not impose a *limitation* on the legislature's authority to do more than what the provision minimally requires. Rather, it establishes a floor, and not a ceiling. When a constitutional provision mandates the legislature do something that it has authority to do, it is not reasonable to read that mandate as restricting the legislature's broader power to do something more.

This understanding is illustrated by an analogy. An employment contract requiring an employer to "make a payment of $500 each month" to its employee cannot reasonably be read to prohibit the employer from making more than one such payment in a given month. If the employer elects to make an additional $500 payment in December as a bonus, the employer has not breached the contract; the contract required *a* payment, and the employer made two. So too here. By exercising its plenary authority to enact the Idaho parental choice tax credit, the legislature did not exceed its lawful power or violate the Idaho Constitution.

The Petitioners do not dispute that the public school system created by the legislature is general, uniform, thorough, free, and common. Having created such a system, nothing in Article IX, section 1 limits the legislature's plenary power to do more. The framers of Idaho's Constitution understood how to impose limitations on legislative power. Article V, section 13, for example, provides that "[t]he legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government . . . ." Idaho Const. art. V, § 13. There is no similar limiting language in Article IX, section 1.

*Evans* does not support the Petitioners' reading of Article IX, section 1. In *Evans*, this Court held only that the legislature could not divide the Board of Education into three bodies because the Constitution requires that "general supervision of the public schools of the state shall be vested in *a* board of education." 124 Idaho at 10–11, 855 P.2d at 471–72 (emphasis added) (quoting Idaho Const. art. IX, § 2). This conclusion is fully consistent with our holding today.

Article IX, section 1 at issue here and Article IX, section 2 at issue in *Evans* serve distinct constitutional functions, and there is no reason that use of the indefinite article "a" in one provision carries the same meaning in the other. As discussed above, section 1 imposes a duty on the legislature to do a particular thing; it does not limit the legislature's authority to do other things. By contrast, section 2 grants authority to a singular entity, "a board of education," to exercise "general supervision" over Idaho's educational system. The constitutional context of section 2 is therefore materially different from that of section 1. Accordingly, our interpretation of the

15

indefinite article "a" in *Evans* neither mandates nor suggests that the same interpretation should be applied to the use of "a" in Article IX, section 1.

Finally, the Petitioners rely on canons of construction and history to support their interpretation of Article IX, section 1. We do not resort to history or the canons of construction when the meaning of the relevant provision is clear and unambiguous. *See Sweeney v. Otter*, 119 Idaho 135, 138, 804 P.2d 308, 311 (1990) ("Where the language [of a constitutional provision] is unambiguous, there is no occasion for the application of rules of construction."). A provision "is not ambiguous simply because the parties present differing interpretations to the court." *State v. Kraly*, 164 Idaho 67, 70, 423 P.3d 1019, 1022 (2018). Rather, "[a] constitutional provision is ambiguous where reasonable minds might differ or be uncertain as to its meaning." *State v. Winkler*, 167 Idaho 527, 531, 473 P.3d 796, 800 (2020) (citation modified) (quoting *City of Idaho Falls v. H-K Contractors, Inc.*, 163 Idaho 579, 582, 416 P.3d 951, 954 (2018)). For the reasons discussed above, we conclude that Article IX, section 1 is clear, unambiguous, and its meaning is contrary to the Petitioners' interpretation. We do not, therefore, reach the Petitioners' arguments regarding history and canons of construction.

**B. The Petitioners have not shown that Idaho Code section 63-3029N violates the "public purpose doctrine."**

Next, the Petitioners argue that the tax credit violates the "public purpose doctrine" implicit in the Idaho Constitution. "It is a fundamental constitutional limitation upon the powers of government that activities engaged in by the state, funded by tax revenues, must have primarily a public rather than a private purpose." *Idaho Water Res. Bd. v. Kramer*, 97 Idaho 535, 559, 548 P.2d 35, 59 (1976); *see also State ex rel. Walton v. Parsons*, 58 Idaho 785, 793, 80 P.2d 20, 22 (1938) ("It is to be noted that the Idaho Constitution contains no provision requiring that taxes be levied for a public purpose, or anything of similar import. That, however, is necessarily implied, as the very foundation of the power to tax is the presence of a public purpose to be subserved by the expenditure for which the taxes are raised." (quoting *Or. Short Line R.R. Co. v. Berg*, 52 Idaho 499, 514, 16 P.2d 373, 378 (1932) (Leeper, J., dissenting)))."A public purpose is an activity that serves to benefit the community as a whole and which is directly related to the functions of government." *Kramer*, 97 Idaho at 559, 548 P.2d at 59. The Petitioners argue that Idaho Code section 63-3029N has primarily a private rather than a public purpose because it "routes public money to private schools, private tutors, private curriculum vendors, and private education companies, all operating entirely outside of Idaho's constitutional public system."

16

In applying the public purpose doctrine, this Court looks to the legislature's stated objective and, although that articulation is not "binding or conclusive," affords it "great deference" in identifying the legislation's primary purpose. *Kramer*, 97 Idaho at 559, 548 P.2d at 59. Absent a showing that the legislature's stated rationale is "arbitrary or unreasonable," we will accept it. *Id.*

According to the Act, the stated objective of Idaho Code section 63-3029N is to facilitate parents' ability to choose the educational services that they believe best meet the needs of their children:

> It is the intent of the Legislature that parents in this state be able to choose educational services that meet the needs of their individual children. The Legislature affirms that parents have a fundamental right, recognized in Section 32-1010, Idaho Code, to nurture and direct their children's education. The Legislature further finds that because some parents cannot initially afford qualified expenses, parents whose taxable income does not exceed 300% of the federal poverty level may request an advance payment of the Idaho parental choice tax credit to pay for all or a portion of an eligible student's qualified expenses.

Act of Feb. 27, 2025, ch. 9, § 1, 2025 Idaho Sess. Laws 29, 29.

Education is a public purpose. *See Davis v. Moon*, 77 Idaho 146, 153, 289 P.2d 614, 618 (1955) ("The furtherance of education is universally regarded as a public purpose."). This Court looks past the statement of purpose only if it is "arbitrary or unreasonable." *Kramer*, 97 Idaho at 559, 548 P.2d at 59.

Reasonable minds may differ over the wisdom or effectiveness of Idaho Code section 63-3029N as a matter of policy. But "public policy considerations are primarily the business of the [l]egislature." *Ruffing v. Ada Cnty. Paramedics*, 145 Idaho 943, 946, 188 P.3d 885, 888 (2008). There is nothing arbitrary or unreasonable in the legislature's statement of purpose for Idaho Code section 63-3029N.

The Petitioners contend that Idaho Code section 63-3029N serves a primarily private purpose because it "routes" money to private entities by effectively using parents as middlemen to fund and maintain an alternate education system. But the fact that a tax credit may incidentally benefit private enterprise does not transform the statute's purpose into a primarily private one. *See Nelson v. Marshall*, 94 Idaho 726, 731–32, 497 P.2d 47, 52–53 (1972) (holding that a loan from the State to a private individual for the development of wells in an arid area was to effectuate a broad public purpose—the irrigation of arid land—though the loan also benefited the private individual to whom the loan was made and assisted him to make a profit); *Bd. of Cnty. Comm'rs*

*of Twin Falls Cnty. v. Idaho Health Facilities Auth.*, 96 Idaho 498, 502, 531 P.2d 588, 592 (1974) (bond funding mechanism intended to "improve the caliber of health care available to the public" served a public purpose though it had "incidental benefits to profit-making enterprises").

The Petitioners also contend that Idaho Code section 63-3029N serves a private rather than public purpose because private schools that may benefit from the tax credit need not accept every student who seeks admission and, relatedly, these schools are not subject to State regulation. Those concerns, however, do not establish that the tax credit implicates the public purpose doctrine. Idaho Code section 63-3029N requires that nonpublic schools provide "academic instruction to eligible students." I.C. § 63-3029N(2)(d). "'Academic instruction'. . . includes, at a minimum, English language arts, mathematics, science, and social studies." I.C. § 63-3029N(2)(a). In addition, the statute provides tax credits for a variety of qualified educational expenses, not just private school tuition. I.C. § 63-3029N(2)(f), (3). Given this broad range of educational services to which the tax credit can be applied, the statute supports the public purpose of educating Idaho's school children. The fact that some educational services are provided by private actors who may limit the scope of admission to their schools does not make the educational services less beneficial to the public as a whole.

In addition, the Petitioners' argument on this principle is, in reality, just a repackaging of their first argument—that Article IX, section 1 only permits one system of schools that has to be a "general, uniform and thorough system of public, free common schools." Having already concluded that Article IX, section 1 sets a floor, not a ceiling, the "general, uniform and thorough" language does not mandate that anything else fails to serve a public purpose.

## C. The Tax Commission is entitled to an award of attorney fees.

The Petitioners and the Tax Commission both request an award of attorney fees; the Legislature, as Intervenor, does not. The Petitioners are not entitled to such an award because we have denied the Petition.

The Tax Commission relies on Idaho Code section 12-117(4) as entitling it to an award of fees. That section provides that, "[i]n any civil judicial proceeding involving as adverse parties a governmental entity and another governmental entity, the court shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses." I.C. § 12-117(4). "For purposes of [that] subsection, 'governmental entity' means any state agency or political subdivision." *Id.* The Tax Commission is a state agency. *See* I.C. § 12-117(6)(f) (defining "state

18

agency" by reference to Idaho Code section 67-5201); I.C. § 67-5201(4) (subject to exceptions not relevant here, defining "agency" to mean "each state board, commission, department or officer authorized by law to make rules or to determine contested cases"); I.C. § 63-105(2) (providing the Tax Commission authority to make rules). The School District is a political subdivision. *See* I.C. § 12-117(6)(d) (defining "political subdivision" to mean "a city, a county, any taxing district or a health district"); I.C. § 63-3101 (defining "taxing district" to include "any school districts"). Because the Tax Commission is a governmental entity adverse to another governmental entity (the School District) in a civil judicial proceeding in which it prevailed, Idaho Code section 12-117(4) mandates that the Tax Commission receive an award of its reasonable attorney fees. *See E. Side Highway Dist. v. Kootenai County*, ___ Idaho ___, ___, 572 P.3d 153, 162 (2025).

## IV.    CONCLUSION

For the reasons discussed above, we deny the Verified Petition for Writ of Prohibition. The Idaho State Tax Commission is awarded its reasonable attorney fees pursuant to Idaho Code section 12-117(4). Both the Idaho State Tax Commission and the Idaho State Legislature are awarded costs pursuant to Idaho Appellate Rule 40.

JUSTICES BRODY, ZAHN, and MEYER CONCUR.


MOELLER, J., specially concurring.

When this Court rules on issues of great constitutional magnitude and public concern, such as those presented in this case, our rulings are sometimes seen as "landmark" decisions or "watershed" rulings. This implies that there has been a fundamental change in the constitutional landscape. I wish to stress that I do not believe that is what has occurred today. However, because I anticipate that many will view this decision through such a lens, either despairing or rejoicing in the outcome depending on their personal convictions, I write this special concurrence to emphasize my own perspective—that the constitutional foundation for public education in Idaho remains firmly intact. The Idaho Constitution's longstanding support of public education has not been altered by our interpretation of the plain language of Article IX, section 1, nor have we somehow relieved the legislature of its constitutional duty "to establish and maintain a general, uniform and thorough system of public, free common schools." Idaho Const. art. IX, § 1. Indeed, we have merely clarified the meaning of these words.

19

At the time of the framing of the Idaho Constitution, the delegates to the Constitutional Convention of 1889 spoke in hallowed and visionary terms about the future state of Idaho and the role that public education would play in it. One delegate remarked: "[W]e are laying the foundations of a state, not for ourselves, but for our children and our children's children, and for generations yet unborn." 1 *Proceedings & Debates of the Constitutional Convention of Idaho 1889*, at 706 (I.W. Hart ed., 1912) (statement by A.F. Parker of Idaho County). Thus, it was with much foresight and concern for the rising generations of Idahoans that the Framers first penned the words around which so much of the disagreement in this case has centered:

> The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, free common schools.

Idaho Const., art. IX, § 1.

As a result of our decision, in which I fully concur, these words remain in full force and effect, and they will continue to guide the actions of all three branches of the government. In sum, nothing in our opinion has relieved the legislature of its duties; it remains accountable to the Constitution and the people of Idaho to maintain free public schools that are "general, uniform and thorough." *Id.* While the Constitution does not prevent the legislature from considering innovations that further support and improve education throughout Idaho, its duty to maintain the public schools remains fixed and abiding.

In the case at hand, we have heard the Petitioners' concerns that, by allowing the parents of children who are not enrolled in the public schools to receive a tax credit to recover a portion of the education costs they have directly incurred, the legislature will be breaking a longstanding constitutional promise made to the people of Idaho. However, the Petitioners have failed to prove that the State is not capable of simultaneously maintaining a constitutionally grounded system of public schools while also assisting parents who have elected not to participate in that system. Since the Petitioners opted to bring their challenge to this Court through a direct action—before a single tax credit has been approved and any of the harm they envision has come to pass—this Court cannot prohibit through an extraordinary writ what has yet to be satisfactorily shown will violate a constitutional imperative. The Petitioners' injury claims are currently hypothetical and speculative; yet they may be reexamined in the future when the impact of this legislation can be properly ascertained.

Importantly, we have not been asked to weigh in on the wisdom of these new policies, nor could we do so even if we were inclined. Today, we have only determined that nothing in the Idaho Constitution prohibits the legislature—provided it fulfills its constitutional duty to public education—from using tax credits to assist parents who are financing their children's education outside of that system. There is no doubt that the public, educators, and policy makers will learn much about the impact of House Bill 93 (Idaho 2025) in the days to come. As they do, it will remain all our duty to live up to the educational promises the Framers of Idaho's Constitution made to "our children and our children's children, and [to] generations yet unborn."